Ilene A. CREAR, Petitioner-Appellant,†

v.

LABOR & INDUSTRY REVIEW COMMISSION and
Racine County Human Services Department, Respondent.

Court of Appeals

No. 82–2104. Submitted on briefs June 14, 1983.—
Decided August 22, 1983.

For the petitioner-appellant the cause was submitted
on the brief of *Theodore W. Harris* of Racine.

† Petition to review granted.

For the respondent the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, *Maureen McGlynn,* assistant attorney general, and *William R. Halsey,* deputy corporation counsel of Racine.

Before Scott, C.J., Voss, P.J., and Brown, J.

BROWN, J. Ilene Crear claims an employer fired her due to racial bias. She asserts the social workers with whom she worked were prejudiced toward her. We uphold the LIRC's decision that the social workers were not supervisors in fact or law. Therefore, it cannot be said that her employer was a party to the racial *animus,* if it existed at all. We further hold that an employer cannot be held responsible for the racial bias of co-employees absent knowledge.

In 1976, Crear became employed by the Racine County Department of Social Services as a social service aide. She was required to serve a six-month probationary period before attaining permanent status. Crear was placed in the unit supervised by Lamon McPheron, where she assisted the social workers by performing tasks they individually requested. Crear's assignments included helping clients move, helping them obtain Medicare and Medicaid services, and completing tasks which ordinarily would be performed by the social workers.

Upon his return from a vacation, McPheron learned that Crear had refused to perform part of her normal duties as requested by one of the social workers. Aware that Crear was approaching the end of her probation, McPheron then spoke with the other social workers to see if they had any complaints about Crear's job performance. These conversations revealed a series of instances of Crear's failing or refusing to perform her normal duties. McPheron then met with the director of the Department who instructed McPheron to write down his concerns about Crear's job performance and present this report to the director and to Crear. Five days after

Crear was given McPheron's report, she was notified by the director that her employment would be terminated at the end of the probationary period.

Crear filed a complaint with the Department of Industry, Labor and Human Relations (DILHR) alleging racial discrimination by two social workers, Judy Berndt and Richard Davis, which affected the conditions of her employment and her discharge.[1] Crear concedes that she never mentioned Davis' alleged racist comments to McPheron. She and McPheron differ regarding whether she discussed Berndt's remarks with him. Berndt testified that she had discussed racial subjects with Crear on a few occasions but that she had not made derogatory remarks about blacks. Berndt also denied that Crear had ever expressed discomfort with any of their conversations. The DILHR hearing examiner decided the Department had discriminated against Crear on the basis of race. The Labor and Industry Review Commission (LIRC) reversed the examiner, and the circuit court affirmed the LIRC's decision and order in all respects.

The Wisconsin Fair Employment Act (WFEA) in effect at the time of Crear's dismissal states: "It is unlawful for any employer . . . to discriminate against any employe . . . ." Sec. 111.325, Stats. Section 111.-32(5)(a), Stats. (1975), stated: " 'Discrimination' means discrimination because of . . . race . . . , by an employer . . . against any employe . . . in regard to his hire, tenure or term, condition or privilege of employment . . . ."[2]

---

[1] Simultaneously with the filing of the complaint, Crear sought a meeting with the Racine County Personnel Committee regarding her termination. After a hearing, the Committee offered to reinstate Crear on the condition that she serve another six-month probationary period. Crear refused the offer, stating that she did not want to return to work in the same racial environment.

[2] Since Crear began this action, the Act has been amended in respects not pertinent here.

Crear does not argue that the employer directly discriminated against her. Nor is there any allegation that McPheron, Crear's official supervisor, was in any way involved in the purported racial harassment. Rather, Crear contends that the social workers were her *de facto* supervisors and that the employer is therefore responsible for the alleged racially biased conditions under which she worked. In support of this argument, Crear asks this court to adopt the definition of "supervisor" found in the National Labor Relations Act, as interpreted in *Ohio Power Co. v. NLRB,* 176 F.2d 385 (6th Cir. 1949).

[Section] 2(11) of the National Labor Relations Act as amended by the Labor Management Relations Act of 1947, . . . reads as follows:

> *"The term 'supervisor' means any individual having authority, in the interest of the employer, to* hire, transfer, suspend, lay off, recall, promote, discharge, *assign,* reward, or discipline other employees, *or responsibly to direct them,* or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

> *This section is to be interpreted in the disjunctive* . . . , and the possession of any one of the authorities listed in § 2(11) places the employee invested with this authority in the supervisory class. [Emphasis added.]

*Id.* at 386–87.

Crear claims that since the social workers had authority to assign her to specific daily tasks, this factor alone, considered in the disjunctive, proves that the social workers were supervisors as a matter of law. We decline to follow the rule stated in *Ohio Power* because the nearly identical statutory language contained in Wisconsin's Municipal Employment Relations Act (MERA), sec. 111.70, Stats.,[3] has been interpreted differently by

---

[3] Section 111.70(1)(o), Stats., provides that:
Supervisor means:

our supreme court. The MERA is found in subchapter IV of the Employment Relations chapter. Crear brings her suit under the Fair Employment Act, which is subchapter II of the same chapter. As such, the definition of "supervisor" found in the MERA, as construed by the Wisconsin Employment Relations Commission and state courts, is appropriately extended to the Fair Employment Act.

In *City Firefighters Union Local No. 311 v. City of Madison,* 48 Wis. 2d 262, 270–71, 179 N.W.2d 800, 804–05 (1970), the court approved the following WERC criteria for deciding whether supervisory capacity exists under sec. 111.70, Stats.: (1) the authority to effectively recommend the hiring, promotion, transfer, discipline or discharge of employees; (2) the authority to direct and assign the work force; (3) the number of employees supervised and the number of other persons exercising greater, similar or lesser authority over the same employees; (4) the level of pay, including an evaluation of whether the supervisor is paid for his skill or for his supervision of employees; (5) whether the supervisor is primarily supervising an activity or is primarily supervising employees; (6) whether the supervisor is a working supervisor or whether he spends a substantial majority of his time supervising employees, and (7) the amount of independent judgment and discretion exercised in the supervision of employees. *Id.* We interpret the case to mean that these criteria are not to be considered in the disjunctive such that any one factor is

1. As to other than municipal and county firefighters, any individual who has authority, in the interest of the municipal employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employes, or to adjust their grievances or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

determinative. Rather, the totality of the criteria must be considered.

[1]

Applying these criteria to the undisputed testimony of record in this case, it is clear that the social workers are not Crear's supervisors. They did not have authority to hire, transfer, discipline or discharge her. Although they had authority to direct her daily activities, they did not have authority to assign her to McPheron's particular unit in the Department. Neither could the social workers decide that she would do client contact rather than exclusively clerical tasks; that decision was made by McPheron. The eight social workers equally shared Crear's time; none of them had an exclusive claim to her efforts. The social workers were presumably paid for social work; there was no showing that any of them received a raise in pay for supervising Crear. To the extent any of the social workers supervised anything, they oversaw the activities Crear was to do, not Crear herself. Each social worker's job was primarily unchanged by the addition of Crear to the unit; directing Crear was apparently a very minor part of each day's activities. Finally, the social workers exercised independent judgment only in asking Crear to help one client rather than another. Therefore, the social workers were Crear's co-workers rather than her supervisors.

Crear next argues that even if the social workers did not attain supervisory status, the employer remains responsible because as co-workers, they generated an environment of racial animosity. We disagree, for the Department can be held responsible for racially unpleasant working conditions only if Crear's supervisor or others in management authorized, knew or should have known of any discrimination practiced by the social workers. We think the WFEA, like Federal Title VII, "contemplate[s] liability for supervisory employees only." *Guy-*

*ette v. Stauffer Chemical Co.*, 518 F. Supp. 521, 525 (D. N.J. 1981). "[I]t would stretch the meaning of the term 'employer' too far to bring such [a non-supervisory] employee within its coverage." *Id.* at 526.

The LIRC essentially found that none of the relevant management personnel knew or should have known the remarks were made. This finding is supported by substantial evidence. The record reveals that Crear complained of racially-directed remarks by only two of the social workers. She makes no claim of ever having brought to McPheron's attention any offensive remark made by social worker Davis. Crear is unsure whether she protested to McPheron regarding remarks made by Berndt. McPheron testified that he remembered no instance of Crear's discussing with him racially offensive comments by any of the social workers. Absent any showing that McPheron or any other supervisor authorized, knew or should have known of Crear's discomfort with the working conditions, the Department cannot be held liable for racial discrimination against Crear.

*By the Court.*—Judgment affirmed.