Franzetta CALLAWAY, Plaintiff,

v.

Donald HAFEMAN; Clarence Sherrod; Herman Moody, Jr.; Kwame Salter; Barbara Arnold; Anne Arnesen; Richard Berg; Nicki Smith; Nancy Brien; and the Madison Metropolitan School District, Defendants.

No. 85–C–611–S.

United States District Court,
W.D. Wisconsin.

Feb. 24, 1986.

Stafford, Rosenbaum, Rieser & Hansen, Fox, Fox, Schaefer & Gingras, Madison, Wis., for plaintiff.

Lawton & Cates, Isaksen, Lathrop, Esch, Hart & Clark, Brynelson, Herrick, Gehl & Bucaida, DeWitt, Sundby, Huggett, Schumacher & Morgan, Madison, Wis., for defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Before the Court in this action grounded upon 42 U.S.C. § 1983 are two summary judgment motions: one on behalf of defendant Herman Moody; and the other on behalf of defendants Kwame Salter, Barbara Arnold, Anne Arnesen, Richard Berg, Nicki Smith and Nancy Brien. Jurisdiction is based on 28 U.S.C. § 1343.

## MEMORANDUM

I. *Motion of Herman Moody*

A. Facts

Plaintiff Franzetta Callaway, until July 1, 1985, served the Madison (Wisconsin) Metropolitan School District as Affirmative Action Officer and as a Human Relations Coordinator. In the latter capacity, her supervisor was defendant Herman Moody, Jr., who was the Human Relations Director for the School District. In her capacity as Affirmative Action Officer, plaintiff reported directly to the School District's Superintendent, defendant Donald Hafeman. Plaintiff had held these positions since her initial hiring in November 1980. Moody assumed his responsibilities as Human Relations Director in July 1983, although he had previously held other positions with the School District.

It is alleged that beginning in January 1983, and intensifying after July 1, 1983, Moody engaged in sexual harassment of the plaintiff. Such harassment took the form of an attempt to kiss the plaintiff, numerous propositions to meet after work or at out-of-town conferences, and suggestive remarks or conduct. These advances were uninvited and discouraged.

Plaintiff complained of this sexual harassment to defendant Salter in December 1983, and again in May or June 1984. She also reported the harassment to defendant Hafeman and defendant Clarence Sherrod, the School District's legal counsel, in June or July 1984.

Plaintiff's complaints of the sexual harassment by Dr. Moody were oral and informal. She explains that she did not want to make a public issue of the allegations and viewed the allegations as personal and confidential. A performance evaluation of plaintiff prepared in May 1984 by Moody was, in plaintiff's view, negative in tone and motivated by her reporting of the sexual harassment. Although Moody denied plaintiff's allegations, a meeting was held with Superintendent Hafeman to resolve the grievance. Moody was advised that, if such behavior had occurred, it should cease, and that the situation between the two would be monitored. Plaintiff was dissatisfied that she was not transferred from under Moody's supervision, although this dissatisfaction was relayed only to her attorney.

It is alleged that Moody thereafter subjected plaintiff to retaliation by creating a hostile work environment.[1] Plaintiff reported this fact to Hafeman, who allegedly did nothing. As late as June 1985, plaintiff was still trying to resolve her dispute with Moody privately and informally, as evidenced by her attorney's discussion with Mary K. Baum (a School Board member not named in this lawsuit).

During the period that plaintiff was being subjected to retaliation and before this lawsuit was filed (June 1984 through June

---

1. There is some dispute in this regard. Plaintiff's allegations supplement a proposed finding of fact offered by Moody, but the allegations do not contradict anything in the proposed finding. It is therefore not fatal to plaintiff's allegations that she depends solely on her complaint. At any rate, the allegations do not erect any roadblock to deciding the issue framed by the motion.

1985), a plan to reorganize human relations and affirmative action programs was formulated by Moody, at Hafeman's delegation. Moody's initial proposal was submitted in December 1984, and was modified by Hafeman, who thereafter presented the proposal to the Board. The Board also made some modifications, and the plan was implemented in July 1985. The reorganization resulted in plaintiff being reassigned as an administrative assistant in the Human Relations Department, under Moody. Her affirmative action duties were assumed by Moody, and her duties relative to Title IX were assigned to another person. Plaintiff was transferred to an office at Lincoln School, where she was the only administrative staff person present. She considers her new assignment to be a *de facto* demotion. Plaintiff was openly and publicly critical of the reorganization plan.[2]

B.   Opinion

Plaintiff's claims against defendant Moody are for retaliation because of her complaint of sexual harassment, first claim for relief; and, in the amended fifth claim for relief, for conspiring with others to the same end and with the same motivation under both state and federal law. Plaintiff's federal claims against Moody are grounded exclusively on the First Amendment. It is her contention that Moody's retaliatory acts, creating a hostile work environment and formulating a reorganization plan that abolished her position and resulted in her demotion, were motivated by a desire to punish her for reporting Moody's sexual harassment to his superiors. Plaintiff explicitly concedes this point.[3]

Until recently, the analysis of such claims was controlled by *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), which required a balancing of the interests of the employee as a citizen in commenting on matters of public concern and the interests of the employer. However, in *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the Court made clear that which was implicit in *Pickering:* that a threshold inquiry is whether the speech involved is a matter of public concern.

> When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment.

*Connick,* 461 U.S. at 146, 103 S.Ct. at 1689–90. *See also Knapp v. Whitaker,* 757 F.2d 827, 839 (7th Cir.1985). It is at this threshold inquiry where defendant Moody directs his motion. He argues that the speech involved in this case, oral complaints of sexual harassment directed to Moody's superiors, is not expression relating to a matter of concern to the community. This is a question of law, the determination of which depends upon "an examination of the content, form, and context of the speech." *Yoggerst v. Hedges,* 739 F.2d 293, 295 (7th Cir.1984), citing *Connick,* 461 U.S. at 147–48, 103 S.Ct. at 1690–91.

The Court of Appeals has held that this analysis requires an assessment of the point of the speech in question:

> The touchstone in Connick, on which *Yoggerst* II was based, is the difference

---

**2.** In this regard, plaintiff has recently filed a supplement to defendant Moody's findings of fact that were filed by Moody in response to the addition of a conspiracy claim some weeks ago. She suggests that Moody "adopted the illegal motives of all other defendants to retaliate against the plaintiff for communicating with the press" concerning the reorganization of the affirmative action program. This allegation does not appear in the complaint, and, further, plaintiff's communications with the press were subsequent to any alleged acts of retaliation by

Moody. Accordingly, the Court concludes that this allegation is not supported by any evidence of record.

**3.** At page 102 of her brief, plaintiff states that:
> Plaintiff's first claim against Moody is that he retaliated against her because she reported his sexual harassment, in violation of plaintiff's right of free speech and association guaranteed by the First and Fourteenth Amendments to the United States Constitution.

between matters of public concern and matters of personal interest ... [T]he *Connick* test does not consist in looking at what might be incidentally conveyed by the fact that the employee spoke in a certain way. The test requires us to look at the *point* of the speech in question: was it the employee's point to bring wrongdoing to light? Or was the point to further some purely private interest? In *Connick* itself there was no doubt that the issues raised by the employee, issues of morale and discipline, were public concern; the Court looked beyond that fact to the employee's motive in raising them:

> While discipline and morale in the workplace are related to an agency's efficient performance of its duties, the focus of Myers' questions is not to evaluate the performance of the office but rather to gather information for another round of controversy with her superiors.

103 S.Ct. 1691. Similarly, in *Yoggerst*, the question the employee asked expressed dissatisfaction with her superior, and employee dissatisfaction is of some public concern. But the *point* of asking the question was not to bring the fact of employee dissatisfaction to the attention of the public, but simply to air her own feelings about the director.

*Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir.1985) (emphasis in original).

In this case, the context and form of the speech leads to the inescapable conclusion that the concern was personal, not public. The complaints of sexual harassment were oral and meant to be confidential, not public. The content of the speech may have touched upon a matter of significant public concern in the sense that sexual harassment in public employment is a subject of public interest. However, this particular charge did not become a matter of public concern (at least until after this lawsuit was filed) because the point of plaintiff's complaint to the School District's administration and School Board members was to resolve a problem with her superior.

This case is significantly different than *Givhan v. Western Line Consolidated School District*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979) on which plaintiff bases her opposition to the motion. Although the communication in *Givhan* was indeed private, the speech was on a subject of public concern (racial discrimination) and in a context not connected with plaintiff's personal interest. It does not matter that sexual harassment, like racial discrimination, may be a matter "inherently of public concern" as plaintiff urges. *See Connick*, 461 U.S. at 148, n. 10, 103 S.Ct. at 1691–92, n. 10. What matters is that plaintiff's complaint here was personal, not general.

It also does not matter that plaintiff's position elicits some sympathy. The Court of Appeals noted in *Altman v. Hurst*, 734 F.2d 1240, 1243–44 (7th Cir.1984) that, when a private motive for the speech is evident, the disciplining of the employee is not actionable under § 1983. The Court concluded that:

> [W]e recognize that permitting him to maintain this action would open the federal floodgates to all manner of petty personnel disputes. Such disputes are best left to internal procedures established by employers and employees or, as here, where no such protection exists or where such procedures are inadequate, through state court adjudication.

*Id.* at 1244. The private motive of the plaintiff here is indisputably evident. It is admitted that the point of her speech was to bring to the attention of Moody's superiors the fact of his sexual harassment and to bring about a change in her position as his subordinate. In fact, it is apparent from *Altman* that the private nature of plaintiff's communications is not crucial. The *Altman* plaintiff was complaining, at least in part, of retaliation for filing a federal lawsuit. The fact that the personal dispute became public was not of critical importance, but the employee's motive for the complaint was. Accordingly, the First Amendment is not implicated in this case, and plaintiff's federal claims against Moody must be dismissed.

■ Plaintiff is also asserting a state claim against Moody and others for declaratory and injunctive relief pursuant to the Wisconsin Fair Employment Act, Wis. Stats. § 111.31 et seq. In particular, under § 111.322(3) it is an act of employment discrimination:

> (3) To discharge or otherwise discriminate against any individual because he or she has opposed any discriminatory practice under this subchapter or because he or she has made a complaint, testified or assisted in any proceeding under this subchapter.

Moody seeks summary judgment or dismissal on this claim under three different theories. First, he argues that plaintiff failed to observe the notice of claim requirement of § 893.80(1), Wis.Stats. Second, he argues that plaintiff has not exhausted her state remedy for precisely the same relief under § 111.39, Wis.Stats. And third, he argues that plaintiff's state claim ought to be dismissed under *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 383 L.Ed.2d 218 (1966) and *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), because the absence of a federal claim against Moody dictates a dismissal of a pendent state claim.

■ All of these objections are well taken. The only notice of claim was filed after this lawsuit was filed. The statute requires that an agency be given 120 days to decide whether or not to grant the relief requested in the notice of claim, and that no action may be commenced before that time. *See Rabe v. Outagamie County*, 72 Wis.2d 492, 241 N.W.2d 428 (1976) and *Mannino v. Davenport*, 99 Wis.2d 602, 299 N.W.2d 823 (1980). Contrary to plaintiff's authority (*Kaiser v. City of Mauston*, 99 Wis.2d 345, 299 N.W.2d 259, 266 (1980), it is clear that the notice of claim statute covers equitable as well as monetary relief. *Figgs v. City of Milwaukee*, 121 Wis.2d 44, 357 N.W.2d 548, 553 (1984). If the *Kaiser* case, a Court of Appeals decision, has any continued vitality after the *Figgs* decision by the Supreme Court, it is in the context of a case where the exigencies of a preliminary injunction are present. This is not such a case.

■ With respect to the second argument presented by Moody, the Wisconsin Court of Appeals in *Bachand v. Connecticut General Life Insurance Co.*, 101 Wis.2d 617, 305 N.W.2d 149 (1980), held that there was no private cause of action under the Wisconsin Fair Employment Act, but that the administrative remedies were exclusive and that the Act "was not designed to create a private cause of action as long as an adequate remedy is otherwise available in a DILHR [Department of Industry, Labor and Human Relations] proceeding." It is undisputed that the relief sought by plaintiff here is available in the administrative forum. Although *Bachand* has been subjected to criticism, *see Shanahan v. WITI*, 565 F.Supp. 219 (E.D.Wis. 1982), this Court has previously found the *Bachand* holding compelling. *See Gunderson v. Riverview Hospital Association*, Case No. 84–C–533–S (W.D.Wis.1984). The Hon. Barbara B. Crabb, United States District Judge, in *Elbe v. Wausau Hospital Center*, 606 F.Supp. 1491 (W.D.Wis.), adopted the view in *Shanahan*, but has recently reconsidered that holding in light of *Koehn v. Pabst Brewing Co.*, 763 F.2d 865 (7th Cir.1985), and held that the Wisconsin Fair 1985), and held that the Wisconsin Fair Employment Act does not create an implied private right of action. *Mursch v. Van Dorn Company*, 627 F.Supp. 1310 (W.D. Wis.1986). Accordingly, it is clear that the claim against Moody under the Wisconsin Fair Employment act should be dismissed on this ground also.

■ The third ground for dismissal is equally compelling under the cases cited by the defendant, *Aldinger* and *Gibbs*. Plaintiff in fact offers no argument except to urge that the federal claims should not be dismissed. A fourth ground, not specifically addressed by the motion, would also provide a basis for dismissing a pendent claim under the Fair Employment Act against any individual defendant. A supervisor may not be an "employer" within the meaning of § 111.32(6)(a), Wis.Stats. The

Court, in *Huebschen v. Department of Health and Social Services,* 716 F.2d 1167 (7th Cir.1983), so held with respect to Title VII. The Wisconsin Court of Appeals recognized the applicability of Title VII case law in a related context in *Crear v. Labor & Industry Review Commission,* 114 Wis.2d 537, 339 N.W.2d 350, 353 (1983). Thus, whatever claim plaintiff may have under the Fair Employment Act is against the School District, not against individual supervisors.

In order to minimize the impact of a decision on the motion with respect to plaintiff's state claims, the Court will grant the motion on the ground provided by *Aldinger v. Howard.*

## II. *Motion of the School Board Members*

### A. Facts

Defendants Salter, Arnold, Arnesen, Berg, Smith and Brien are Board members of the Madison Metropolitan School District. Salter is the president of the Board. These six Board members voted to adopt a plan reorganizing the District's Affirmative Action Title IX programs in June 1985. Another Board member, Mary Kay Baum, who is not a defendant in this action, voted against the plan.

The reorganization plan was part of the School District's budget adopted on June 17, 1985, at a meeting of the Board's Budget and Finance Committee on which all members of the Board serve. The plan proposed to change the structure of the School District's affirmative action and Title IX programs by creating a management team of senior administrators rather than having a single position to fulfill such functions. The specific budget votes which implemented the plan were a 6 to 1 vote (Baum voting "no") "to delete the Affirmative Action Coordinator Allocation (page 88), which technically is the Affirmative Action/Title IX/Human Relations Coordinator position in the amount of $33,200;" and a second proposal by Salter "to sup-

port a .5 fulltime equivalency allocation to the General District Administration Budget (page 70) in the amount of $16,600," which also passed 6 to 1 (Brien voting "no"). This had the effect of deleting from the budget the position held by plaintiff. She was subsequently transferred to an administrative assistant position in the Human Relations Department directly under Moody's supervision. Plaintiff views this change in position as a demotion and alleges that the decision on the reorganization plan was retaliation against her for her reporting of Moody's sexual harassment, for her public criticism of the reorganization plan, and for advising district personnel to take legal action. In addition to constituting individual claims against the Board members (plaintiff's first claim for relief), these facts also constitute a conspiracy claim against these and other defendants (plaintiff's fifth claim for relief).

Plaintiff has also made a pendent state claim [4] against the Board members for negligently failing to supervise defendant Moody and preventing him from retaliating against her. Defendant Salter is specifically alleged to have had actual knowledge of the harassment and to have failed to adequately respond to the complaint, and breaching a duty to supervise. The other board members are alleged to have breached a general duty to provide adequate supervision of Moody sufficient to prevent him from retaliating against plaintiff for her complaint. Plaintiff filed a notice of claim with the School District, charging negligent supervision of Moody, on July 15, 1985, three days after filing this lawsuit.

Plaintiff also alleges a due process violation by virtue of the Board's action on plaintiff's request for a hearing on the decision to transfer her subsequent to the adoption of the reorganization plan. The request for a hearing, filed on July 1, 1985, alleged that her transfer was motivated by her sexual harassment complaint, and that the reorganization would diminish the ob-

---

**4.** Although the complaint is unclear, plaintiff concedes that the negligent supervision claim is based solely on state law by agreeing to pro-

posed finding of fact number 17, which states: "Plaintiff's negligent supervision claims are brought under state law."

jectivity and effectiveness of the affirmative action and Title IX programs. At the Board's next meeting, on July 8, 1985, defendant Hafeman distributed a confidential memorandum alleging that a hearing would be a waste of time, that the sexual harassment grievance had been resolved, and that the members of the Board would be contacted by defendant Sherrod with respect to this request. The Board members were contacted the next day, and a majority of the Board communicated their intentions to deny plaintiff's request. This constitutes, according to plaintiff, a vote denying her a hearing, in violation of the Wisconsin Open Meetings Law, Wis.Stats. § 19.81 *et seq.* Under this theory, plaintiff alleges that the property interest at issue is not her position with the District, but her procedural rights under the Open Meetings Law. Pursuant to Wis.Stats. § 19.97, plaintiff filed a complaint alleging a violation of the Open Meetings Law with the District Attorney, who declined to prosecute the complaint.

### B. Opinion

Plaintiff summarizes her claims against these defendants as follows:[5]

1. A federal claim, grounded in the First Amendment, that her transfer and refusal to grant a hearing were in retaliation for her report of sexual harassment, her communications with the press on affirmative action issues, and her advice to School District employees to seek legal redress of grievances;

2. A state negligence claim for the Board members' breach of their duty to supervise Moody, and their failure to prevent his retaliatory acts;

3. A federal claim, grounded in the Due Process Clause of the Fourteenth Amendment, based on the decision to deny her a

hearing on her grievances in violation of the state's open meeting law; and

4. A state and federal conspiracy claim for the decision to transfer her and cover up the retaliatory motives in violation of the First and Fourteenth Amendments.

The defendants contend that the transfer[6] of the plaintiff from her affirmative action duties was the result of a legislative decision, and that they are absolutely immune from liability regardless of their motivation. Plaintiff counters that School Board members are not entitled to anything more than qualified immunity and, in any event, the Board's decision in this case was administrative, not legislative.

The question of whether School Board members are entitled to absolute legislative immunity for legislative acts is answered by the Supreme Court's decision in *Lake Country Estates, Inc. v. Tahoe Regional Planning Commission*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979) and cases decided by lower courts since that time. Of particular importance are *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983) and *Heiar v. Crawford County*, 558 F.Supp. 1175 (W.D.Wis.1983).

In *Lake Country Estates*, the Court recognized that immunity was necessitated by notions of the "public good" in that legislators needed to be uninhibited by threats of damage liability in the exercise of the legislative powers granted to them. *Id.* 440 U.S. at 404–05, 99 S.Ct. at 1178–79, citing *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 788, 95 L.Ed. 1019 (1951). The Court concluded that the members of an appointed regional body were as deserving of such protection as federal and state legislators because the rationale was equally applicable. However, the Court declined to decide whether legislative functions at the purely local level were entitled to legis-

---

5. Plaintiff's brief, pages 1 and 2.

6. It is clear that the transfer was the result of the reorganization plan since plaintiff's prior job was abolished by the action of the Board. It follows that the refusal to grant a hearing on the transfer adds nothing to plaintiff's claim since the Board's action amounts to a refusal to re-

consider its prior action. Plaintiff has conceded that the federal conspiracy claim is governed by the legislative immunity argument. Transcript of proceedings, Jan. 22, 1986, p. 22. This is also shown by the discussion of the *Thillens* case, infra.

lative immunity. *Id.* 440 U.S. at 404, n. 26, 99 S.Ct. at 1178–79, n. 26.

This question was decided, at least for purposes of city council members, by *Reed v. Village of Shorewood, supra,* where the Court had little trouble in concluding that city council members were entitled to immunity. Only a month before *Reed,* this Court came to an identical conclusion with respect to county board members. *Heiar v. Crawford County, supra.*

■ Although there are apparently no cases which expand this doctrine to school board members, the conclusion is inescapable that there is no principled way to deny such coverage. As even a cursory reading of the above cases demonstrates, it is the legislative function that merits protection for reasons of public policy. In *Lake Country Estates,* 440 U.S. at 405, 99 S.Ct. at 1179, the Court pointed out, quoting Justice Frankfurter in *Tenney,* that "it was not consonant with our scheme of government for a Court to inquire into the motives of legislators." This rationale is equally applicable to the members of any body exercising legislative power. Neither *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) nor *McLaughlin v. Tilendis,* 398 F.2d 287 (7th Cir.1968), both cited by plaintiff, dictate a different conclusion. The actions of the school boards in those cases were not legislative in nature: the direct disciplining of students in *Wood,* and teachers in *McLaughlin.*

■ Therefore, the crucial question in this case is whether the acts of the School Board members were legislative (as in *Reed* and *Heiar*) or were administrative (as in *Wood* and *McLaughlin*). Although there is some danger of elevating form over substance, that question must be answered by examining how the Board accomplished its end, not in questioning the motivation of the members. This functional approach is illustrated by the decision in *Thillens, Inc. v. Community Currency Exchange,* 729 F.2d 1128 (7th Cir.1984), cert. dismissed, —— U.S. ——, 105 S.Ct. 375, 83 L.Ed.2d 342. The plaintiff complained that two state legislators had influenced a regulatory agency to promulgate rules contrary to the plaintiff's interests in return for bribes from the plaintiff's competitors. The Court of Appeals directed the dismissal of the complaint against the legislators, holding that:

Thillens' charges thus broadly implicate the defendants' function of influencing the legislative process regarding a legitimate legislative issue. Establishing the defendants' role in the conspiracy naturally would require investigation into activities cloaked with immunity, including study of staff activities and motivations for acts of the defendants and their staffs geared toward enacting the challenged laws. Official immunity was designed to prevent a plaintiff from using a civil action to peer so deeply into the legislative process. As the Supreme Court stated, "one must not expect uncommon courage even in legislators. The privilege would be of little value if they could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader.... *Tenney,* 341 U.S. [367] at 377, 71 S.Ct. [783] at 788 [95 L.Ed. 1019].

Thillens' second argument is that because the complaint is directed principally at the defendants' acceptance of the bribes, the defendants cannot be protected. Again we must disagree. Thillens will not be able to show that it is entitled to relief "without proof of a legislative act or the motives or purposes underlying such an act." *Gravel* [v. *U.S.*], 408 U.S. [606] at 621, 92 S.Ct. [2614] at 2625 [33 L.Ed.2d 583]; *see Brewster [U.S. v. Brewster],* 408 U.S. [501] at 526, 92 S.Ct. [2531] at 2544 [33 L.Ed.2d 507]. As noted above, Thillens' causes of action are inextricably linked to allegations that the defendants misused their legislative authority and influence to enact legislation detrimental to Thillens. Its conspiracy theories depend on proof of the defendants' motives and on a showing of actions taken after bribes were accepted. *Cf. Johnson [U.S. v. Johnson],* 383 U.S.

[169] at 176–77, 86 S.Ct. [749] at 753–54 [15 L.Ed.2d 681].

*Id.* at 1131. As defendants note, plaintiff's entire argument with respect to whether the defendants' acts were legislative is based on facts tending to show illegitimate motive or on the fact that the result of the acts was detrimental to her. *Thillens* makes clear that the corruptness of the motive is of no consequence, and plaintiff continually interjects argument about motive into the debate. Language quoted by plaintiff in support of this line of argument from *Bruce v. Riddle*, 631 F.2d 272 (4th Cir.1980) is, in fact, directly contrary to the holding of the Seventh Circuit in *Thillens*, and the language is dicta in any event.

■ Plaintiff also cites a number of cases holding that hiring, firing and disciplinary actions by local legislative bodies are not protected. For example, *McLaughlin, supra; Greminger v. Seaborne*, 584 F.2d 275 (8th Cir.1978); *Williams v. Anderson*, 562 F.2d 1081 (8th Cir.1977). This is, no doubt, a correct statement of the law that now prevails. However, defendants here did not directly do anything with respect to plaintiff's employment. The formulation of the reorganization plan, and the votes taken which, in effect, eliminated plaintiff's position from the budget, were clearly legislative acts. Whether the adoption of the plan was, as plaintiff asserts, a "ruse" to transfer, and in effect, demote, one employee—the plaintiff,[7] is an inquiry that cannot be pursued in this forum under the precedents cited in the preceding paragraphs. Thus, these defendants must be granted summary judgment with respect to plaintiff's federal retaliation and conspiracy claims.

■ Plaintiff's other federal claim against these defendants, that the private vote denying her a hearing deprived her of a property right granted under the state's Open Meetings Law without due process, is utterly without merit. The Wisconsin Open Meetings Law, Wis.Stats. § 19.81 et seq., provides that, with some exceptions, all meetings of governmental bodies shall be in open session, preceded by public notice, and that enforcement shall be pursuant to action by the attorney general, by a district attorney upon a verified complaint of any person, or by such person in his own right if the district attorney fails to commence an action to enforce the law within 20 days. Plaintiff made such a complaint to the Dane County District Attorney, who declined to prosecute, and the record discloses no attempt by the plaintiff to commence an action under the law.

The Court cannot help but conclude that the law is purely procedural and grants no substantive rights protected by the due process clause. The declared policy of the law is that "the public is entitled to the fullest and most complete information regarding the affairs of government as is compatible with the conduct of governmental business." § 19.81(1). However, such "entitlement" language does not lead to the conclusion that some property right is granted. The context shows that the law is designed merely to specify how governmental business is to be conducted, and this case shows the absurdity of constitutionalizing state procedures against which the Court of Appeals warned in *Shango v. Jurich*, 681 F.2d 1091 (7th Cir.1982). Does plaintiff mean to contend that she had a right to a hearing on whether she had a right to a public hearing on her request for a hearing? *"Reductio ad absurdum,"* indeed! *Id.* at 1101.

■ Even if this law could conceivably be read to establish some substantive right, the law clearly provides a mechanism for remedying denial in the enforcement provisions. The law itself provides all the process that is due, so that whatever deprivation there may have been was not without due process. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

■ Finally, the Court is faced with pendent state claims. Both the failure to observe the notice of claim statute, Wis. Stats. § 893.80(1), and the motion to dis-

---

7. Plaintiff's brief, page 15–16.

miss pursuant to *United Mine Workers v. Gibbs,* are raised in this context as well. The arguments are just as persuasive. Furthermore, defendants argue that Wisconsin law does not recognize a claim against individual school board members for failing to supervise a district employee. The Court agrees. Plaintiff can only point to Wis.Stats. § 120.12(2), which states that school boards shall:

> (2) GENERAL SUPERVISION. Visit and examine the schools of the school district, advise the school teachers and administrative staff regarding the instruction, government and progress of the pupils and exercise general supervision over such schools.

Whether this duty of general supervision implies a duty to directly supervise a district employee has, as far as the Court can discover, never been litigated. There are significant reasons why such a duty should not be implied, the most important of which is that unpaid voluntary school board members should not be required to carry such responsibilities when they have little or no day-to-day contact with the administraton of the district. To the extent that defendant Salter had knowledge of the sexual harassment by Moody, there is no reason to believe under the law or the facts of this case that he, as an individual Board member, had any power, much less a duty, to supervise Moody. Certainly, if the Board itself had no duty, the individual Board member did not.

At any rate, it is clear that the disposal of the federal claims against the Board members dictates that a dismissal without prejudice be entered under *Gibbs* and *Aldinger.*

### ORDER

IT IS ORDERED that the motions for summary judgment of defendant Moody and defendants Salter, Arnold, Arnesen, Berg, Smith and Brien are GRANTED with respect to all federal claims against them.

IT IS FURTHER ORDERED that plaintiff's pendent state claims against defendant Moody and defendants Salter, Arnold, Arnesen, Berg, Smith and Brien are DISMISSED without prejudice.