**Sherrie BEDFORD**

v.

**SOUTHEASTERN PENNSYLVANIA TRANS. AUTHORITY, Judith Pierce, Louis Van de Beek, M.D., Captain Federico Cabanes and Police Chief Ronald Sharpe.**

Civ. A. No. 93–1020.

United States District Court, E.D. Pennsylvania.

Oct. 18, 1994.

---

Gary M. Gusoff, Philadelphia, PA, for plaintiff.

Saul H. Krenzel, Philadelphia, PA, for defendants.

## MEMORANDUM

WALDMAN, District Judge.

### I. BACKGROUND

Plaintiff was employed as a police officer by defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"). She alleges that she was sexually harassed at work and terminated for complaining about such conduct and because of her sex. She also alleges that she was terminated without due process. She has asserted claims against all defendants under Title VII, 42 U.S.C. §§ 1983 and 1985(3). She also asserts a pendent claim for intentional infliction of emotional distress against all of the individual defendants.[1]

---

**1.** Plaintiff concedes that she cannot sustain the § 1981 claim, also asserted in the complaint and confirms that despite defendants' perception to

Presently before the court is defendants' Motion for Partial Summary Judgment on plaintiff's Title VII claims for retaliatory discharge and hostile work environment, her § 1985 conspiracy claim, her § 1983 First Amendment and procedural due process claims, and her intentional infliction of emotional distress claim.

## II. *LEGAL STANDARD*

In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Arnold Pontiac–GMC, Inc. v. General Motors Corporation*, 786 F.2d 564, 568 (3d Cir.1986). Only facts that may affect the outcome of a case under applicable law are "material." *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510.

All reasonable inferences from the record must be drawn in favor of the non-movant. *Anderson, supra* at 256, 106 S.Ct. at 2514. Although the movant has the initial burden of demonstrating an absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). The non-movant cannot satisfy its burden by relying on unsupported allegations in its pleadings or statements in its brief. *Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir.1990).

## III. *FACTS*

The pertinent uncontroverted facts and evidence otherwise taken in a light most favorable to plaintiff are as follow.

Plaintiff was employed by SEPTA as a transit police officer from October 24, 1989 to April 23, 1992. On October 4, 1991, plaintiff reported for a routine medical examination by defendant Van de Beek, a SEPTA physician, to assess her fitness for duty. During the examination defendant Van de Beek intentionally and unnecessarily placed a stethoscope under her brassiere and pressed his pelvic area against her buttocks while examining her back. Plaintiff related the incident to Kathleen Blankley, a SEPTA investigating officer, who relayed the report to Judith Pierce, then chief administrative officer of SEPTA. There were similar reports by four of the other women examined by Dr. Van de Beek over the two days that the physical examinations were conducted.[2] They reported that the doctor had pressed his pelvic areas against their hand or knee, although one stated that at the time she believed this was accidental.

Usually the Civil Rights Department of SEPTA would conduct any investigation of such reports. In this instance, however, Judith Pierce assumed control over the internal investigation assigned to Ms. Blankley. Ms. Pierce instructed Ms. Blankley to keep the investigation confidential, reporting only to her, SEPTA Police Chief Sharpe or Deputy Chief Evans. When Officer Blankley suggested that she advise Dr. Van Beek of his *Miranda* rights before interviewing him because his alleged conduct could constitute a crime, she was ordered not to do so by Ms. Pierce who told her that this was purely a civil matter.

Ms. Blankley was told by Ms. Pierce that she wanted to interview the women who had related acts of inappropriate or offensive contact by Dr. Van de Beek. Plaintiff was interviewed by defendant Pierce in her office on October 10, 1991. Ms. Pierce asked plaintiff to relate what had occurred and to reenact with a female officer the alleged incident during the spinal examination to ascertain whether what plaintiff alleged was possible

the contrary, she had not attempted to assert a separate claim for invasion of privacy.

**2.** Some of the women also complained that during their physical examinations they were tested for pregnancy and venereal diseases without their knowledge or consent.

given the disparity in height between her and Dr. Van de Beek. Plaintiff felt embarrassed and demeaned, but testified that she was not made to feel that her job was in jeopardy.

Ms. Pierce told plaintiff that Dr. Van de Beek's reputation was at stake and he could sue her for claiming that he sexually harassed her. Ms. Pierce stated that nothing was going to happen to Dr. Van de Beek. Ms. Pierce also told plaintiff that she could pursue a complaint through the SEPTA Office of Civil Rights. Defendants Pierce and SEPTA permitted the investigation to lapse without taking any action against Dr. Van de Beek. A report of the allegations of Dr. Van de Beek's conduct was given to the District Attorney's Office which declined to file any criminal charges.

Six months later, on April 23, 1992, plaintiff was terminated by SEPTA Police Captain Cabanes with the concurrence of defendant Sharpe. The reason given for the termination was that while off-duty plaintiff exhibited conduct unbecoming of an officer during an incident on March 23, 1992 in which a bus driver was assaulted. Criminal charges, including aggravated assault, were filed against plaintiff after this incident. At a trial on September 17, 1992, plaintiff was acquitted of the charges against her except for the summary offense of harassment for which she was convicted. Plaintiff avers and the court will assume that it was actually plaintiff's sister who assaulted the bus driver and that plaintiff did not participate in or abet the assault.

Plaintiff was not afforded a hearing of any kind or any opportunity to present her story prior to her termination. Male officers who had criminal charges pending against them were not charged with engaging in conduct unbecoming of an officer or received lighter punishment such as a suspension.

Defendants Sharpe and Cabanes testified that they had no prior discussion about plaintiff's discharge with defendant Pierce or with each other. They testified that Captain Cabanes submitted a written report to Chief Sharpe through Deputy Chief Evans regarding the criminal charges against plaintiff with a recommendation that she be terminated for unbecoming conduct, and that Mr. Evans and defendant Sharpe concurred after reading the report. Captain Cabanes testified that at the time he decided plaintiff should be discharged he did not know that she had complained about Dr. Van de Beek.

## IV. DISCUSSION

### A. Plaintiff's Retaliatory Discharge Claim

██ To sustain a claim of discriminatory retaliation under Title VII, plaintiff must show that she engaged in conduct protected by Title VII; her employer took adverse action against her; and, a causal link exists between her protected conduct and the employer's adverse action. *Charlton v. Paramus Board of Education*, 25 F.3d 194, 201 (3d Cir.1994). Plaintiff may rely on circumstantial evidence. *See Griffiths v. CIGNA Corp.*, 988 F.2d 457, 470 (3rd Cir.1993).[3]

██ Plaintiff engaged in protected activity when complaining to her employer about alleged sexual harassment. *See Magnuson v. Peak Technical Services, Inc.*, 808 F.Supp. 500, 515 (E.D.Va.1992). Plaintiff's discharge is clearly an adverse employment action. Defendants argue that there is no evidence of any connection between the decision by defendants Cabanes and Sharpe to terminate plaintiff and her complaint six months earlier about sexual harassment.

██ There is no evidence that Captain Cabanes, who proposed plaintiff's termination, knew of her complaint about Dr. Van de Beek. If the person who decided that plaintiff's employment should be terminated had no knowledge that she had engaged in the protected activity in question, then clearly he could not have retaliated against her for so doing. *See, e.g., Long v. AT & T Information Systems, Inc.*, 733 F.Supp. 188, 206 (S.D.N.Y.1990). That an adverse employment action occurs six months after a plaintiff complains of sexual harassment does

3. Defendants concede that based on the evidence of disparate treatment of similarly situated male officers, plaintiff has made out a discriminatory discharge claim sufficient to withstand summary judgment.

not establish a causal link. *Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 321 (7th Cir.1992).

Plaintiff argues in her brief that the denials by defendants Sharpe and Cabanes of collaboration with defendant Pierce are not believable. The fact remains that one cannot prove that a discussion occurred by presenting testimony from the purported participants that it did not occur. A jury cannot find that Ms. Pierce effected plaintiff's discharge for reporting an occurrence of sexual harassment six months earlier or for any other reason without engaging in conjecture or speculation. Indeed, plaintiff acknowledged at her deposition that she had no knowledge or facts to show that Ms. Pierce ever discussed or influenced the decision to terminate plaintiff and that this is merely "my own theory."

Plaintiff's reliance on *Geary v. Visitation of the Blessed Virgin Mary Parish School,* 7 F.3d 324 (3d Cir.1993) is misplaced. The plaintiff in *Geary* produced direct explicit evidence that she was subjected to an adverse action because she had filed a discrimination suit against the defendants. *See Geary,* 7 F.3d at 332.

Plaintiff has failed to present competent evidence to sustain her retaliatory discharge claim.

### B. *Plaintiff's Conspiracy Claim*

■ To sustain a § 1985(3) claim, a plaintiff must establish that defendants conspired to violate a federal right for reasons of racial, or perhaps some other class-based, animus, and that plaintiff was injured or deprived of such a right by an act undertaken in furtherance of the conspiracy. *See United Broth. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 834–36, 103 S.Ct. 3352, 3359–60, 77 L.Ed.2d 1049 (1983); *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *Pratt v. Thornburgh,* 807 F.2d 355, 357 (3d Cir.1986).[4]

■ Defendants contend that plaintiff cannot sustain her conspiracy claim because gender is not a "class" encompassed by § 1985(3). The Supreme Court has expressly declined to decide whether gender constitutes a class for purposes of § 1985(3). *See Bray v. Alexandria Women's Health Clinic,* —— U.S. ——, ——, 113 S.Ct. 753, 759, 122 L.Ed.2d 34 (1993). Sex is an immutable characteristic resulting from a fortuity of birth and women historically have been victims of discrimination. *See Banghart v. Sun Oil Co. of Penna.,* 542 F.Supp. 451, 454–55 (E.D.Pa.1982). The court is satisfied that gender-based animus is encompassed by § 1985(3). *See Volunteer Medical Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir.1991); *Novotny v. Great American Federal Savings & Loan Ass'n.,* 584 F.2d 1235, 1243 (3d Cir.1978) (en banc), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Chambers v. Omaha Girls Club,* 629 F.Supp. 925, 942 (D.Neb.), *aff'd.,* 834 F.2d 697 (8th Cir.1986). *See also Ward v. Connor,* 657 F.2d 45, 48 (4th Cir. 1981) (religious group), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982); *Le Blanc–Sternberg v. Fletcher,* 781 F.Supp. 261, 269 (S.D.N.Y.1991) (same).

■ Defendants next contend correctly that a § 1985(3) claim cannot be premised on the deprivation of a right created by Title VII. *See Novotny,* 442 U.S. at 378, 99 S.Ct. at 2352. When state or municipal actors combine to discriminate against a plaintiff in the terms of public employment because of her sex, however, she may assert a § 1985(3) claim for conspiracy to deprive her of equal protection. *See Trautvetter v. Quick,* 916 F.2d 1140, 1153 (7th Cir.1990); *Padway v. Palches,* 665 F.2d 965, 969 (9th Cir.1982); *Wymer v. New York State Div. for Youth,* 671 F.Supp. 210, 213 (W.D.N.Y.1987); *Roybal v. City of Albuquerque,* 653 F.Supp. 102, 106 (D.N.M.1986); *Gobla v. Crestwood School District,* 609 F.Supp. 972, 980 (M.D.Pa.1985).[5]

---

4. In the case of a private conspiracy, a plaintiff must show that the object was a deprivation of a federal right secured against private infringement. *See Scott,* 463 U.S. at 830–31, 103 S.Ct. at 3357–58.

5. Whether § 1985(3) extends to a conspiracy to retaliate against an individual for exercising the right of free speech is questionable. *See Herhold v. City of Chicago,* 723 F.Supp. 20, 36 (N.D.Ill. 1989). In any event, as noted, plaintiff has not

Defendant next argues that SEPTA and its employees constitute a single entity which legally cannot conspire with itself. For purposes of § 1985(3), a corporation can conspire with employees or officers who are acting in their individual capacities. *Robison v. Canterbury Village, Inc.*, 848 F.2d 424, 431 (3d Cir.1988). Moreover, corporate officials can conspire with each other for purposes of § 1985(3). *Novotny*, 584 F.2d at 1238.[6] *See also Rebel Van Lines v. City of Compton*, 663 F.Supp. 786, 792 (C.D.Ca.1987) (to apply intracorporate conspiracy exception to governmental entities to bar § 1985(3) claims could effectively immunize some official discriminatory conduct).

There is no evidence to support a finding that any defendant other than Sharpe and Cabanes participated in the decision to terminate plaintiff.[7] While the only evidence is that they communicated in writing and through Deputy Chief Evans, drawing all possible inferences in favor of plaintiff, there is circumstantial evidence from which one could find that defendants Sharpe and Cabanes collaborated to deprive plaintiff of her right to equal protection.

### C. *Plaintiff's First Amendment Claim*

Defendants contend that because plaintiff's complaint concerns a personal matter and was privately communicated, she cannot maintain a First Amendment claim. A plaintiff can sustain a § 1983 First Amendment claim by showing that she engaged in protected speech and that this activity was a substantial factor in her discharge. *Swineford v. Snyder County Pa.*, 15 F.3d 1258, 1270 (3d Cir.1994); *Gillum v. City of Kerr-*

*ville*, 3 F.3d 117, 120 (5th Cir.1993); *Dwyer v. Smith*, 867 F.2d 184, 193 (4th Cir.1989); *Wilbur v. Mahan*, 3 F.3d 214, 216 (7th Cir. 1993). Defendants may still defeat such a claim by proving that the same action would have been taken absent the protected conduct. *Swineford, supra.*[8]

In the public employment context, speech is protected when it appears from an examination of the content, form and context that it relates to a matter of public concern and not merely a personal interest or grievance. *Connick v. Myers*, 461 U.S. 138, 146–48, 103 S.Ct. 1684, 1689–91, 75 L.Ed.2d 708 (1983); *Smith v. Fruin*, 28 F.3d 646, 650 n. 7 (7th Cir.1994) (purpose of public concern requirement to distinguish "entirely personal" grievances from "statements of broader interest concerning one's job"); *Swineford*, 15 F.3d at 1271.

It fairly appears that plaintiff was internally voicing a grievance about how she personally was treated. This does not necessarily, however, make her statement a purely personal grievance or one upon a matter solely of personal concern. *See Tao v. Freeh*, 27 F.3d 635, 640 (D.C.Cir.1994) (speech involving personal grievance may touch upon matter of public concern).

Had plaintiff publicly complained of sexual harassment, her statement clearly would relate to a matter of legitimate public concern. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir.1988) (complaint of racial harassment voiced to reporter involved matter of public concern). Where one voices an internal complaint of an act of harassment or discrimination to secure some personal ad-

---

adduced evidence to link Ms. Pierce or the complaint about Dr. Van de Beek to her discharge. Section 1985(3) does not encompass conspiracies to deny due process. *See Dunn v. New Jersey Transit Corp.*, 681 F.Supp. 246, 251 (D.N.J.1987); *Beacon Syracuse Associates v. City of Syracuse*, 560 F.Supp. 188, 200 (N.D.N.Y.1983).

**6.** Defendants ask the court to disregard *Novotny* for the stated reason that it is inconsistent with the law of other circuits. This is an invitation which the court declines.

**7.** Although, as noted, all defendants are named in the complaint, plaintiff stated at her deposition that she was contending that only defen-

dants Pierce, Sharpe and Cabanes conspired to effect her termination.

**8.** Defendants, who steadfastly denied that plaintiff's complaint played any role in her discharge, do not rely on this precept. Similarly, defendants do not contend that plaintiff was justifiably discharged for speaking out because of any disruption caused by her doing so. *Swineford*, 15 F.3d at 1272. *See also San Filippo v. Bongiovanni*, 30 F.3d 424, 434 n. 11 (3d Cir.1994) (balancing test triggered only if employer concedes employee discharged for engaging in otherwise protected speech).

vantage, the complaint is arguably a matter of private interest only. *See Swineford,* 15 F.3d at 1272 (speaker's motivation is factor to be considered).

■ Where, however, one complains to her employer of alleged sexual harassment and abuse of a position of trust by an agency physician, implicating his fitness for continuing in public employment, not to secure personal gain but to expose and protect herself and other female employees in the future from such conduct, the court concludes that it does touch upon a matter of legitimate public concern.[9] In *Connick,* a statement in a questionnaire which was only transmitted internally to the speaker's co-workers was held to relate to a matter of public concern. *See Connick,* 461 U.S. at 148–49, 103 S.Ct. at 1690–91. *See also Smith,* 28 F.3d at 653 (private or discreet nature of statement does not obviate fact that it may address matter of public concern); *Tao,* 27 F.3d at 640 (statement does not lose protection because it is communicated privately to employer); *Yoggerst v. Hedges,* 739 F.2d 293, 296 (7th Cir. 1984) (distinguishing expression of personal dislike of official from comment implicating his qualification for continuing in office).

■ More persuasive is defendants' argument that plaintiff has failed to adduce evidence sufficient to sustain a finding that she was deprived of her right to speak or was discharged for exercising it. Plaintiff's statement was received by Ms. Blankley and Ms. Pierce who told plaintiff that she could lodge a formal complaint with the Office of Civil Rights. Plaintiff acknowledged at her deposition that no one told her she could not relate her complaint to the District Attorney's Office or anyone else. A public employee is not denied the right to speak because a supervisor questions the veracity of what he or she has said. As noted, there is no competent evidence to show that Ms. Pierce participated in the decision to terminate plaintiff six months after she reported her experience with Dr. Van de Beek.

---

**9.** The court is aware that other courts have held that internal complaints of sexual harassment are matters of private interest and are not protected by the First Amendment. *See Marrero Rivera v.*

### D. *Plaintiff's Procedural Due Process Claim*

Defendants do not dispute that plaintiff had a cognizable property interest in her employment. They do contend, however, that they provided plaintiff with adequate due process by affording her notice and an opportunity to be heard prior to her termination. Plaintiff avers that while she was aware of the stated reason for the termination, she was not given an adequate opportunity before the termination to refute the allegations against her.

■ Plaintiff had a due process right to at least an informal pretermination hearing to present reasons why the proposed action should not be taken. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); *Perez v. Cucci,* 725 F.Supp. 209, 243 (D.N.J. 1989), *aff'd.,* 898 F.2d 142 (3d Cir.1990). There is a genuine issue of material fact as to whether she was afforded such a hearing. There is, however, no evidence that defendants Van de Beek or Pierce were involved in the termination decision or were responsible for providing pretermination hearings for transit police officers.

### E. *Plaintiff's Hostile Work Environment Claim*

■ To sustain her hostile work environment claim, plaintiff must show that she suffered intentional discrimination because of her sex, that the discriminatory conduct was severe or pervasive enough to alter the conditions of her employment and create an environment reasonably perceived by her as sexually hostile, and the existence of direct or respondeat superior liability of a defendant for such conduct. *Harris v. Forklift Systems, Inc.,* —— U.S. ——, —— – ——, 114 S.Ct. 367, 370–71, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986); *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1485–86 (3d Cir.

---

*Dep't of Justice of Com. of Puerto Rico,* 821 F.Supp. 65, 73 (D.P.R.1993); *Callaway v. Hafeman,* 628 F.Supp. 1478, 1482 (W.D.Wis.1986).

1990); *Sparks v. Pilot Freight Carriers, Inc.,* 830 F.2d 1554, 1558 n. 4 (11th Cir.1987).

While the conduct alleged by plaintiff is deplorable, it was isolated and certainly not pervasive. Plaintiff points to two incidents several days apart, the examination by Dr. Van de Beek and the interview by Ms. Pierce. Further, plaintiff does not contend that she was harassed by Ms. Pierce because of sex, but rather contends that Ms. Pierce was acting to protect Dr. Van de Beek because of a personal friendship between them.

The court believes that a single act of harassment because of sex may be sufficient to sustain a hostile work environment claim if it is of such a nature and occurs in such circumstances that it may reasonably be said to characterize the atmosphere in which a plaintiff must work. In virtually all of the reported cases in which a sexually hostile work environment claim has been sustained, however, the plaintiff was subject to repeated if not persistent acts of harassment in the environs in which she performed her duties. *See e.g., King v. Board of Regents of Univ. of Wis. System,* 898 F.2d 533, 535 (7th Cir.1990) (plaintiff forcibly kissed and fondled, touched and rubbed against and subject to lewd remarks over three month period); *Andrews,* 895 F.2d at 1485–86 (repeated destruction of plaintiff's work product and pervasive use of obscenity and insults directed at female employees in squadroom in which plaintiff worked); *Bohen v. City of East Chicago, Ind.,* 799 F.2d 1180, 1188 (7th Cir.1986) (plaintiff constantly subjected to lurid sexual remarks and repeatedly touched in sexually offensive manner); *Skadegaard v. Farrell,* 578 F.Supp. 1209, 1212 (D.N.J.1984) (plaintiff subjected to repeated crude sexual advances and sexually assaulted).

The law prohibits acts of harassment. Indeed, plaintiff was convicted of violating that law. The law prohibits battery which includes offensive touching. At the heart of a Title VII claim, however, is intentionally discriminatory conduct that effectively alters the terms or conditions of the victim's employment and creates a hostile or abusive climate in which she must work.

Reasonable persons in plaintiff's position would be offended and angered by the conduct alleged. Plaintiff, however, cannot reasonably have perceived the encounter with Dr. Van de Beek and the exchange with Ms. Pierce as constituting a sexually hostile working environment.[10]

### F. *Plaintiff's Intentional Infliction of Emotional Distress Claim*

To sustain a claim for intentional infliction of emotional distress, a plaintiff must show extreme and outrageous intentional or reckless conduct that causes severe emotional distress. *Cox v. Keystone Carbon Co.,* 861 F.2d 390, 395 (3d Cir.1988); *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 190, 527 A.2d 988, 991 (1987); *Hackney v. Woodring,* 424 Pa.Super. 96, 101, 622 A.2d 286, 288 (1993). The conduct complained of must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kazatsky,* 515 Pa. at 191, 527 A.2d at 991; *Daughen v. Fox,* 372 Pa.Super. 405, 412, 539 A.2d 858, 861 (1988).

It has been noted that such conduct will rarely be found in the employment context. *Cox,* 861 F.2d at 395. It has become almost axiomatic that under Pennsylvania law acts of sexual harassment will not support an intentional infliction claim except where an employer takes an adverse employment action against an employee for rebuffing sexual advances and refusing to engage in sexual relations. *See e.g., Andrews,* 895 F.2d at 1487 (1990); *Shaffer v. National Can Corp.,* 565 F.Supp. 909, 916 (E.D.Pa.1983). *See also*

---

**10.** Plaintiff also appears to contend that the failure of defendants Pierce and SEPTA to undertake an adequate investigation and to discipline Dr. Van de Beek is actionable. This evidence could be important to establish Title VII liability for any subsequent sexual harassment, but there is no allegation or evidence of any. An employer who fails to implement policies to deter sexual harassment or promptly to take adequate measures to remedy it if it occurs assumes the risk of liability for future occurrences. A failure properly to pursue a charge of harassment *per se,* however, is not independently actionable.

*Fawcett v. IDS Financial Services, Inc.*, 1986 WL 9877 at *5 (W.D.Pa. Jan. 7, 1986) (advancement conditional on submission to sexual relations).

Virtually all of the Pennsylvania intentional infliction cases, however, involve conduct of a sexual nature or otherwise that is not physical. This is not surprising since in Pennsylvania an intentional offensive touching is a battery and few plaintiffs would assume the burden of proving atrocious conduct when they could recover with a far less stringent showing on a battery claim. This, however, is what plaintiff in the instant case has elected to do.

 If a jury were to find that in a physician-patient relationship a doctor used a physical examination intentionally and unnecessarily to thrust his pelvic area into his patient's buttocks, the court believes that such conduct would be sufficiently egregious to sustain a claim for intentional infliction of emotional distress. While Ms. Pierce might have conducted her investigation in a more sensitive and dignified manner, her alleged conduct cannot fairly be said to exceed "all possible bounds of decency" and to be "utterly intolerable." As to defendants Sharpe and Cabanes this claim is clearly deficient. Even an ill-motivated or callous termination of employment will not support an intentional infliction claim. *See Cox*, 861 F.2d at 390.

As defendants note, there is no independent jurisdictional basis for plaintiff's emotional distress claim against defendant Van de Beek. This claim is not based on the same incident, injury or evidence as plaintiff's remaining claims against SEPTA, Captain Cabanes and Chief Sharpe for denial of procedural due process and for discriminatory termination because of gender. The scope and even the recognition of a cause of action for intentional infliction of emotional distress in Pennsylvania remain uncertain. *See Andrews*, 895 F.2d at 1487 n. 7.

The court concludes that under the circumstances, this claim should be adjudicated in the state courts which should be permitted formally to determine whether the conduct alleged by plaintiff is sufficiently egregious to sustain her emotional distress claim against defendant Van de Beek. The court will thus dismiss this claim without prejudice to plaintiff to pursue it in a state court. *See* 28 U.S.C. §§ 1367(c), (d) and 42 Pa.C.S.A. § 5103(b)(1).

## V. CONCLUSION

The motion for partial summary judgment will be granted except on plaintiff's conspiracy and due process claims against defendants Sharpe, Cabanes and SEPTA, and her claim for intentional infliction of emotional distress against defendant Van de Beek. That claim will be dismissed without prejudice.