Judeth Robbins ANDERSON, Plaintiff,

v.

**DELUXE HOMES OF PA, INC., James Auth and Kenneth Howard, Defendants.**

No. 4:CV–99–1103.

United States District Court,
M.D. Pennsylvania.

March 9, 2001.

Franklin E. Kepner, Jr., Alice T.K. Corba, Kepner, Kepner & Corba, P.C., Berwick, PA, for plaintiff.

James Oschal, Elizabeth Leo, Rosenn, Jenkins & Greenwald, Wilkes–Barre, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On June 28, 1999, plaintiff Judeth Robbins Anderson (Robbins) [1] commenced this action with the filing of a complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Stat. Ann. §§ 951 et seq. She also asserted a claim for wrongful discharge. On March 30, 2000, Robbins filed an amended complaint in which she added, arguably, the tort of intentional infliction of emotional distress. Robbins alleges that she was subjected to a hostile work environment and emotional distress as a result of inappropriate behavior by Deluxe employees James Auth and Kenneth Howard. In addition, she implicitly alleges that she was discharged from Deluxe in retaliation for her complaints to management of Howard's sexual harassment.

Before the court is Deluxe's motion for summary judgment.

---

1. During the time period relevant to this case, the plaintiff was known as Judeth Robbins; she subsequently married and took the name Anderson. We will refer to her as Robbins for the purposes of this memorandum.

*DISCUSSION:*

## I. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a, matter of law.*" Fed. R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. It can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 693–94 (3d Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106

S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The court may not weigh the evidence or make credibility determinations. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir.1998). In determining whether an issue of material fact exists, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Boyle,* 139 F.3d at 393; *White v. Westinghouse Electric Co.,* 862 F.2d 56, 59 (3d Cir.1988).

Once the moving party points to evidence demonstrating that no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor. *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 252 (3d Cir.1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995)). "Speculation and conclusory allegations do not satisfy this duty." *Ridgewood,* 172 F.3d at 252 (citing *Groman,* 47 F.3d at 637). A party opposing a motion for summary judgment may not merely deny the assertions made by the movant, but must identify specific facts in the record that would contradict the facts identified by the movant. *Childers v. Joseph,* 842 F.2d 689, 694–95 (3d Cir.1988); *First Nat'l Bank of Pa. v. Lincoln Nat'l Life Insurance,* 824 F.2d 277, 282 (3d Cir. 1987).

## II. STATEMENT OF FACTS

From August 25, 1997 until her employment was terminated on November 4, 1997, Robbins was employed by Deluxe as a "spackler/finisher." Deluxe, located in Berwick, Pennsylvania, is a company that constructs modular homes and employs approximately 185 people. The production area of Deluxe, where Robbins worked,

has a specific employee hierarchy. Associates report to Captains, who in turn report to Coaches. Deluxe classifies Associates and Captains as separate from "management," while it considers Coaches as part of "management."

All new Deluxe employees are initially placed on a 60–day probationary period. After 60 days, Deluxe either extends the probation period for up to 30 days or discharges the employee. Upon her hiring, Robbins was placed on the customary 60–day probationary period.

The other relevant Deluxe employees for the purposes of this memorandum were both managerial and non-managerial. Donna Fisher was Robbins' Captain. While Deluxe claims that Fisher was not part of management, Robbins asserts that she considered Fisher to be her supervisor and therefore an employee with high authority. Kevin Miller was a Coach who had the authority to extend an employee's probationary period and to terminate his or her employment. Frank Kynik was Deluxe's Human Resources Manager. Bruce Walton was Robbins' boyfriend and co-worker during the relevant time period. Beverly Shultz and Gregory Cashner also were Robbins' co-workers. Finally, the employees whom Robbins claims harassed her were Auth, a production manager, and Howard, an Associate who worked as a roofer.

Robbins indicates that the principal harassers were Auth and Howard. She claims Auth's actions were as follows:

1) After Robbins was late for work one morning due to a flat tire, she said to him that she hoped she would have better luck the next day. Auth said, "Maybe I can be the one to turn your luck around."

2) Auth made the remark to Robbins that "You are like a magnet. I can't seem to keep from hanging around you; you are absolutely beautiful."

3) At one point, Robbins was on a ladder, and Auth said, "Don't worry. If you fall, I will catch you, and I won't let you go. You look real nice today." After the statement, he smiled and winked at her.

Robbins asserts that Howard exhibited the following conduct:

1) He asked to see her socially outside of work on several occasions, and she refused.

2) He called her "Barbie," refused to call her by her real name, and encouraged other male employees to refer to her as "Barbie."

3) He whistled and hissed at her when she was in his immediate vicinity.

4) When she was standing on a work bench, he grabbed her by the calf of her leg, looked at her "private parts," and said, "now that's a pretty sight."

5) As Robbins was climbing down a ladder, he put his hands around her waist and said, "What is that, about a 22–inch waist?"

6) Once, as she was walking to her work area, he touched her breast.

7) On one occasion, Robbins told him to leave her alone and he said, "just remember, I know where you live."

8) One day, Robbins was wearing a sweatshirt with the inscription "Bongo Jeans." Upon seeing the sweatshirt, he grabbed his crotch and said, "You could make my jeans bongo anytime."

9) He said to Robbins, "My dick's bigger than Bruce Walton's. Why would you want him?"

10) He made "tongue motions" to her; she claims he was insinuating oral sex.

Both Auth and Howard deny all of Robbins' allegations and Deluxe presents numerous affidavits of Robbins' co-workers stating that they never witnessed any of this behavior. Some of the events Robbins describes, however, are corroborated by Cashner and Walton in the form of deposition and affidavit testimony, and Shultz claims that while she did not see any of the alleged harassment, she does remember

that Robbins indicated that Howard was bothering her.

A sexual harassment policy was in place at Deluxe, and Robbins admits to having read it at the outset of her employment. While the details of the policy will be set forth in our analysis, the message of the policy was that any employee who was subjected to or witnessed sexual harassment was required to bring the incident to the attention of Kynik or any other member of management. Robbins claims that the policy was a "sham" and that she did complain to Fisher, whom she perceived to be part of management. Fisher denies that Robbins complained to her.

On October 24, 1997, Miller extended Robbins' probationary period for an additional 30 days. Both Miller and Fisher claim that Robbins was not an adequate spackler; they assert that she did not work quickly enough. Robbins admits to being on notice that she needed to work at a faster pace. On November 4, 1997, before the 30–day extension was over, Miller informed her that her employment was terminated. Robbins claims that she was informed of her firing on the same day Miller witnessed her telling Howard to leave her alone.

### III. CLAIMS

In determining Robbins' proper claims, we analyze the amended complaint. The amended complaint, which contains five counts, names as defendants Deluxe, and Auth and Howard individually. Count One of the amended complaint contains a request for relief under Title VII. Count Two is essentially indistinguishable from Count One. Count Three is a wrongful discharge claim, alleging that Robbins was fired without cause or justification in violation of the public policy of Pennsylvania. It also states that she was discharged in part due to "her complaints of inappropriate behavior and sexual harassment." (Amended Complaint at ¶ 51.) Count Four of the amended complaint is a standard PHRA claim. Count Five alleges that "[a]s a

result of the Defendants' action against the Plaintiff... she has suffered server [sic] emotional anxiety, anguish, and depression." (*Id.* at ¶ 58.) In its submissions, Deluxe treats this count as a claim for intentional infliction of emotional distress.

As stated above, Count Three alleges that Robbins' employment was terminated in violation of public policy, akin to a claim of wrongful discharge. "The Pennsylvania Supreme Court has held that the PHRA preempts common law tort claims for wrongful discharge based upon sexual harassment and retaliation because the PHRA prohibits this conduct and provides an exclusive statutory remedy for the violation." *Lee v. Gecewicz,* 1999 WL 320918, at *6 (citing *Clay v. Advanced Computer Applications, Inc.,* 522 Pa. 86, 559 A.2d 917, 918 (1989)).

Three matters must be addressed before we can list Robbins's proper claims. First, we find that Robbins' wrongful discharge claim should be interpreted as a retaliation claim under Title VII and the PHRA. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Monge v. California,* 524 U.S. 721, 740, 118 S.Ct. 2246, 141 L.Ed.2d 615 (1998) (citing *Kamen v. Kemper Financial Services, Inc.,* 500 U.S. 90, 99, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991)). In the section of the amended complaint addressing wrongful discharge, Robbins alleges that "she was terminated solely as a result of her sexual gender, and because of her complaints of inappropriate behavior and sexual harassment." (Amended Complaint at ¶ 51.) Throughout her brief and statement of material facts, she suggests that her firing came as a result of her complaints to management that she was being sexually harassed. Accordingly, rather than ignoring her claim that she was wrongfully discharged, we will proceed to treat it as a

separate claim for retaliation under Title VII and the PHRA.[2]

Second, it is not completely clear from the face of the amended complaint that Robbins' action contains a claim for intentional infliction of emotional distress. The amended complaint alleges only that Robbins ' suffered emotional anxiety, anguish, and depression as a result of the actions taken against her. Deluxe treats this clause as a claim for intentional infliction of emotional distress. We will therefore consider it to be a claim of intentional infliction of emotional distress against both Deluxe and Auth and Howard individually.

Third, Deluxe correctly points out that Auth and Howard should not be named as individual defendants in Robbins' Title VII claim. "Congress did not intend to hold individual employees liable under Title VII." *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1078 (3d Cir.1996). Deluxe is therefore the only proper defendant in the Title VII and PHRA claims.

The claims requiring further discussion, then, are as follows:

1) Title VII and PHRA claims against Deluxe for hostile work environment;

2) Title VII and PHRA claims against Deluxe for retaliation;

3) a claim of intentional infliction of emotional distress against all three defendants.

## IV. TITLE VII

### (A) Hostile Work Environment

It is an unlawful employment practice under Title VII for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national ori-gin." 42 U.S.C. § 2000e–2(a)(1). This prohibition is broader than a bar to economic or tangible discrimination, and covers more than terms and conditions in a narrow, contractual sense. *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). "[S]exual harassment so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment violates Title VII." *Faragher*, 524 U.S. at 786, 118 S.Ct. 2275 (quoting *Meritor*, 477 U.S. at 67, 106 S.Ct. 2399; further citations, internal quotations omitted).

The Supreme Court has described hostile environment claims in general terms. Such a claim has two prongs: objective, meaning that a reasonable person would find the environment hostile or abusive; and subjective, meaning that the victim in fact perceived the environment as hostile or abusive. *Faragher*, 524 U.S. at 787, 118 S.Ct. 2275 (citing *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367).

Whether an environment is hostile or abusive is determined based on the totality of the circumstances, including the frequency and severity of the discriminatory conduct, its nature as physically threatening or humiliating as opposed to a mere offensive utterance, and whether it interferes with an employee's work performance. *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367). Moreover, Title VII does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of their own or

---

**2.** Generally, claims under the PHRA are analyzed in accordance with Title VII. *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir.1996). The discussion herein therefore applies to the PHRA claims as well.

the opposite sex. That is, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Id.* at 788, 118 S.Ct. 2275 (citing *Oncale,* 523 U.S. at 81, 118 S.Ct. 998).

More specifically delineating the elements of such a claim, the Third Circuit has held that, to succeed on a claim of a sexually hostile work environment, a plaintiff must prove that: (1) the plaintiff suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Kunin v. Sears Roebuck and Co.,* 175 F.3d 289, 293 (3d Cir.1999), *cert. denied,* 528 U.S. 964, 120 S.Ct. 398, 145 L.Ed.2d 310 (1999). In determining whether a hostile working environment exists, the totality of the circumstances must be examined. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1486 (3d Cir.1990). *See also Konstantopoulos v. Westvaco Corp.,* 112 F.3d 710, 715 (3d Cir.1997) (citing *West v. Philadelphia Elec. Co.,* 45 F.3d 744, 756 (3d Cir. 1995)) (stating that the Third Circuit has "precluded an individualized incident-by-incident approach" to determining whether a working environment is sexually hostile).

### 1. Intentional Discrimination Because of Sex

■ " 'Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat[ion] ... because of ... sex." ' " *Oncale,* 523 U.S. at 81, 118 S.Ct. 998. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id.* at 80, 118 S.Ct. 998 (quoting *Harris,* 510 U.S. at 25, 114 S.Ct. 367 (Ginsburg, J., concurring)).

Sexual harassment can take different forms, both sexual and non-sexual. "The intent to discriminate on the basis of sex in cases involving sexual propositions, innuendo, pornographic materials, or sexual derogatory language is implicit, and thus should be recognized as a matter of course. A more fact intensive analysis will be necessary where the actions are not sexual by their very nature." *Andrews,* 895 F.2d at 1482 n. 3. "To constitute impermissible discrimination, the offensive conduct is not necessarily required to include sexual overtones in every instance..." *Id.* at 1485. "All that is required is a showing that [gender] is a substantial factor in the harassment, and that if the plaintiff had been [male] she would not have been treated in the same manner." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1083 (3d Cir.1996). *See also Durham Life Ins. Co. v. Evans,* 166 F.3d 139, 148 (3d Cir.1999) (facially neutral acts constituted hostile work environment because they had a sexually-discriminatory motive).

Robbins has produced sufficient evidence of intentional discrimination because of her sex. According to Robbins, Auth complimented her on a few occasions about her appearance and told her once that he would catch her and not let her go. Howard allegedly often asked her to see him outside of work, told her that she could "make [his] jeans bongo anytime," and talked to her about the size of his genitals as compared to her boyfriend's. He also allegedly put his hands around her waist, touched her leg, wagged his tongue in her direction, and grabbed her breast. A reasonable jury could find that had Robbins been male, she would not have been treated in the same manner.

### 2. Pervasive and Regular

■ Deluxe's principal argument is that even if the alleged sexual harassment occurred, the conduct was not so "pervasive and regular" for Robbins' harassment claim to get to a jury. "[H]arassment is pervasive when 'incidents of harassment

occur either in concert or with regularity.' " *Andrews* (quoting *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1189 (2d Cir.1987)). Although the Third Circuit has not explicitly expanded the "pervasive and regular" element, most district courts within the circuit have made the determination based on the Supreme Court's above-mentioned general guidance set forth in *Harris* and reaffirmed in *Faragher*.[3] *See Glickstein v. Neshaminy School District*, 1999 WL 58578, at *8 (E.D.Pa. January 26, 1999); *Crumpton v. Runyon*, 1998 WL 125547, at *2 (E.D.Pa. March 19, 1998); *Calloway v. E.I. Dupont de Nemours and Co.*, 2000 WL 1251909, at *5 (D.Del. August 8, 2000); *DeCesare v. National Railroad Passenger Corp.*, 1999 WL 330258, at *2 (E.D.Pa. May 24, 1999).[4]

We find that Robbins has met her burden on this prong. She attests that How-ard, the alleged principal harasser, was constantly whistling and shrieking in her direction. She claims that on at least three occasions, he touched her. Walton indicates that the whistling and taunting occurred "every day." (Walton Dep. at 104.) Howard allegedly always called Robbins "Barbie" and never referred to her by her real name. She stated that "[Howard] was constantly asking me ... he kept asking me, 'Can't you at least go out to dinner with me? Will you please just go to a movie with me?' " (Robbins Dep. at 268.) Robbins worked at Deluxe for only approximately two months; the alleged incidents would have to have been fairly pervasive to fit within that span of time.[5] Robbins, then, has produced enough evidence to move forward on this element.

**3.** At the risk of being redundant and in light of the great imprecision of Title VII law, we will restate these principles. That is, whether an environment is "hostile or abusive" (the Supreme Court's words, as opposed to "pervasive and regular," the language employed by the Third Circuit) is determined based on the totality of the circumstances, including the frequency and severity of the discriminatory conduct, its nature as physically threatening or humiliating as opposed to a mere offensive utterance, and whether it interferes with an employee's work performance. *Faragher*, 524 U.S. at 787–88, 118 S.Ct. 2275 (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367). Moreover, Title VII does not prohibit genuine but innocuous differences in the ways men and women routinely interact with members of their own or the opposite sex. That is, simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment. *Faragher*, 524 U.S. at 788, 118 S.Ct. 2275 (citing *Oncale*, 523 U.S. at 81, 118 S.Ct. 998). *See also Ascolese v. Southeastern Pennsylvania Transportation Authority*, 902 F.Supp. 533, 543 (E.D.Pa.1995) ("After the Supreme Court's decision in *Harris*, it appears that the second, third and fourth factors in [the Third Circuit standard], the pervasiveness of the conduct and the existence of subjective and objective harm, should be analyzed together to determine whether a work environment is 'hostile' or 'abusive.' ").

**4.** The Supreme Court, in *Meritor*, states that "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 67, 106 S.Ct. 2399 (internal quotation marks omitted). The Third Circuit differs yet again from the Supreme Court by framing the requisite harassment in terms of being "pervasive and regular" (as opposed to "severe or pervasive"). That is, utilizing Supreme Court's language a court may find a Title VII violation for severe harassment that is not pervasive. If pervasiveness is defined in terms of the regularity or relatedness of the harassment, the Third Circuit may have created a rule indicating that although the harassment is required to be "pervasive and regular" (two words that seemingly mean the same thing), its severity is irrelevant. *See Bouton v. BMW of North America*, 29 F.3d 103, 106 n. 2 (3d Cir.1994) (noting but not resolving the difference). We will not decide on a standard, but we will follow the leads of other district courts in the circuit and analyze this requirement in accordance with the factors set forth in Footnote Three.

**5.** In light of Robbins' allegations of Howard's overt conduct such as putting his hands around her waist, touching her leg, grabbing her breast, and wagging his tongue in her direction, we find that his alleged conduct was also "severe." As such, another reason we need not decide which standard to use is that we find Howard's conduct to satisfy both standards.

### 3. Discrimination detrimentally affected the plaintiff

■ The sexual harassment plaintiff must find the harassment to be abusive. "[I]f the [harassment] victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment; and there is no Title VII violation." *Harris*, 510 U.S. at 21–22, 114 S.Ct. 367.[6] Implicit in this prong is that a harasser's sexual advances must be unwelcome to the plaintiff. *Meritor*, 477 U.S. at 68, 106 S.Ct. 2399. Actual economic harm, however, is not required for an employee's job conditions to be altered in violation of Title VII. *Harris*, 510 U.S. at 21, 114 S.Ct. 367.

Psychological harm is likewise not required. "Title VII comes into play before the harassing conduct leads to a nervous breakdown. A discriminatorily abusive work environment, even one that does not seriously affect employees' psychological well-being, can and often will detract from employees' job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." *Id.* at 22, 114 S.Ct. 367. "The effect on the employee's psychological well-being is, of course, relevant to determining whether the plaintiff actually found the environment abusive. But while psychological harm, like any other relevant factor, may be taken into account, no single factor is required." *Id.*[7]

Robbins has provided sufficient evidence both that she perceived Howard's conduct to be abusive and that she was detrimentally affected by it. She spoke in her deposition about the effect Howard's alleged conduct had on her work performance:

> Yes, it definitely [slowed up my progress] because it scared me. It made me afraid. I actually shook when I knew he was coming in that unit. He was actually coming in there only to pursue his smart mouth remarks to me. That's the only reason he had to come in.

(Robbins Dep. at 278.) Robbins also produces letters from a physician, Dr. Richard Rudloff, that comment on her psychological condition. One of the letters states that "Ms. Robbins suffers from an underlying depression and more recently an anxiety disorder which has been exacerbated by what she feels is a hostile workplace environment." (Letter from Richard Rudloff, D.O. to Attorney Alice Corba dated January 14, 1998.) Robbins has produced evidence both that she found her environ-

---

6. Again, there is an inconsistency in the language used by the Supreme Court and that used by the Third Circuit. The Third Circuit requires that a plaintiff be "detrimentally affected" by the harassment. The Supreme Court, in *Harris*, requires only that a plaintiff find the conduct subjectively "abusive" and that a reasonable plaintiff find the environment "hostile and abusive." *Harris*, 510 U.S. at 21, 114 S.Ct. 367. In *Kunin*, a case decided after *Harris*, the Third Circuit reaffirmed the "detrimentally affected" standard. We will follow the Third Circuit's lead and analyze under its standard. *But see Dicks v. Information Technologies, Inc.*, 1996 WL 528890, at \*9 n. 18 (E.D.Pa. August 29, 1996) (stating that, in light of *Harris*, the "detrimentally affected" prongs of the Third Circuit's standard no longer apply; that is, a plaintiff need only show actual and reasonable perception of hostility or abuse).

7. There is another inconsistency between the Third Circuit and the Supreme Court in this area. While *Harris* held that psychological harm is not required to find a violation of Title VII, the Third Circuit, in *Knabe v. Boury Corp.*, 114 F.3d 407, 410 (3d Cir.1997), subsequently reaffirmed its own earlier holding that to succeed in bringing a hostile environment claim under Title VII, a plaintiff must establish " 'by the totality of the circumstances, the existence of a hostile or abusive working environment which is severe enough to affect the psychological stability of a minority employee.' " *Id.* (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990)). We will adhere in the instant case to the Supreme Court's clear directive that psychological harm is not required. *See Moore v. Southeastern Pennsylvania Transportation Authority*, 1998 WL 633659 \*1 (E.D.Pa. August 26, 1998) (noting the discrepancy between the Third Circuit and the Supreme Court but finding it inconsequential to a motion for new trial).

ment to be "hostile and abusive" and that both the quality of her work and her health were detrimentally affected by the alleged harassment.[8] She therefore has made a sufficient showing on this element.

### 4. Reasonable plaintiff

█ Robbins must provide sufficient evidence that a reasonable person would have been detrimentally affected by the harassment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris*, 510 U.S. at 21, 114 S.Ct. 367. Evidence that others were harassed may serve to bolster the objective reasonableness of a plaintiff's claims. *West v. Philadelphia Electric Co.*, 45 F.3d 744, 757 (1995).

Robbins has met her burden on this element. Howard allegedly subjected her to derogatory name-calling, constant shrieking and whistling, and at least three physical invasions. A jury should be permitted to determine whether a reasonable person would have been detrimentally affected by the alleged harassment.[9]

### 5. Respondeat Superior Liability

█ The final element in a successful Title VII claim for hostile working environment is respondeat superior liability.[10] "An employer is not always · liable for a hostile work environment." *Kunin*, 175 F.3d at 293. Employer liability depends upon whether the person charged with creating the hostile environment is the plaintiff's supervisor or merely the plaintiff's co-worker. While neither the Supreme Court nor the Third Circuit has explicitly defined "supervisor" in this context, *Faragher* noted that the power to supervise includes the authority "to hire and fire, and to set work schedules and pay rates." *Faragher*, 524 U.S. at 803, 118 S.Ct. 2275.

"[S]ex-based mistreatment by a supervisor—whether overtly sexual or facially neutral and whether motivated by lust or dislike—creates automatic liability when it rises to the level of a tangible adverse employment action." *Durham Life Ins.*, 166 F.3d at 152 (citing *Faragher*, 524 U.S. at 775, 118 S.Ct. 2275).

Tangible employment action includes employment-related actions such as discharge, demotion, or undesirable reassignment. *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257. " 'Tangible adverse employment ac-

**8.** We note that Robbins has produced evidence that satisfies both the "abusive" standard and the "detrimentally affected" standard.

**9.** As in the previous prong, we find that Robbins has submitted sufficient evidence to move forward under the "detrimentally affected" and the "hostile and abusive" standards.

**10.** In *Kunin*, the Third Circuit noted that the term *respondeat superior* may not be appropriate because liability under Title VII is direct, not vicarious. *Id.* at 293 n. 5 (citing *Williamson v. City of Houston*, 148 F.3d 462, 465 (5th Cir.1998)). The Supreme Court's opinions in *Faragher* and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998), also support the idea that Title VII embodies a special form of liability for which the term is inappropriate, at least as relates to its traditional meaning. The Eleventh Circuit has termed the fifth element

above, "(5) a basis for holding the employer liable," *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir.1999) (*en banc;* citation omitted), *cert. denied*, 529 U.S. 1068, 120 S.Ct. 1674, 146 L.Ed.2d 483 (2000), although it terms the liability "vicarious," *id.* at 1245 n. 4. The appropriate term would depend on whose behavior is at issue, that of the supervisor or the employer itself. Of course, regardless of how liability is characterized or what term is used as an element of liability, the Supreme Court's opinions in *Faragher* and *Ellerth* govern disposition of the instant motion. *But see Allen v. Nat'l R.R. Passenger Corp.*, 90 F.Supp.2d 603, 608–609 (E.D.Pa. 2000) (distinguishing between employer liability for supervisor conduct and coworker conduct but using standards derived from RESTATEMENT which would apply in cases of supervisor harassment). It should be noted, however, that the Supreme Court used the term "vicarious liability." *Faragher*, 524 U.S. at 780, 118 S.Ct. 2275; *Ellerth*, 524 U.S. at 754, 118 S.Ct. 2257.

tion' includes the loss of significant job benefits or characteristics, such as the resources necessary for an employee to do his or her job." *Durham Life Ins.*, 166 F.3d at 144.[11] "Although direct economic harm is an important indicator of a tangible adverse employment action, it is not the sine qua non. If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Id.* at 153.[12]

When the harasser is a supervisor who takes no tangible employment action, "a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. The defense comprises two necessary elements: a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275 (citation omitted).[13]

"While proof that an employer had promulgated an anti-harassment policy with complaint procedure is not necessary in every instance as a matter of law, the need for a stated policy suitable to the employment circumstances may appropriately be addressed in any case when litigating the first element of the defense. And while proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense." *Id.* at 807–808, 118 S.Ct. 2275.

To summarize, if a supervisor's harassment results in a tangible employment action, the employer is liable. If the supervisor does not take a tangible employment action yet still harasses the plaintiff, the employer may use the affirmative defense. A demonstration that a plaintiff unreasonably failed to complain of harassment despite an established complaint policy will generally satisfy the employer's burden at trial.

Since we are not at trial, however, we must analyze the parties' burdens at the summary judgment phase of the proceedings. We will look to the limited case law in the area of factual affirmative defenses at summary judgment. "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c)—that would entitle it to a directed verdict if not controverted at trial." *Celotex*, 477 U.S. at 330, 106 S.Ct. 2548 (Brennan, J., dissenting).

**11.** *Durham Life Insurance* used the term "tangible adverse employment action" interchangeably with *Faragher's* and *Ellerth's* term, "tangible employment action." *See id.* at 150.

**12.** The EEOC Guidance ties the terms "supervisor" and "tangible employment decisions" together by stating that an individual qualifies as a supervisor if he has the authority to undertake or recommend tangible employment decisions affecting the employee. *Vicarious Employer Liability for Unlawful Harassment by Supervisors* (June 18, 1999), EEOC Compliance Manual (BNA) N:4075 (Binder 3); (http://www.eeoc.gov/docs/harassment.html).

**13.** The affirmative defense also may be raised by an employer that did in fact take a tangible employment action after its supervisor harassed a victim, as long the tangible employment action did not *result* from the discrimination. "Tangible employment actions, if not taken for discriminatory reasons, do not vitiate the affirmative defense." *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 182 (4th Cir.1998). *See also Patterson v. CBS, Inc.*, 2000 WL 666337, at *8 ("The *Faragher/Ellerth* defense is available to the employer despite the fact that the employee had been discharged, where the alleged hostile work environment did not culminate in employee's discharge, but the employee was instead fired for another reason.").

The showing by the moving party raising an affirmative defense must be strong indeed:

> When the movant is seeking summary judgment on the basis of an affirmative defense to which the movant bears the ultimate burden of proof at trial... the movant must establish the absence of a genuine issue of material fact as to every element of the affirmative defense. In other words, the movant must establish the affirmative defense as a matter of law such that no reasonable jury could enter a verdict for the nonmovant... If the movant satisfies this onerous burden, the burden shifts to the nonmovant to create a genuine issue of material fact as to any element essential to the affirmative defense.

*David B. Lilly Co., Inc. v. Fisher,* 810 F.Supp. 592, 594, 595 (D.Del.1992), rev'd on other grounds, 18 F.3d 1112 (3d Cir. 1994). In cases where the defendant is the moving party, his task does not change even if he raises an affirmative defense on which he has the burden of persuasion. He must incontrovertibly prove his affirmative defense, because his goal is to take the case away from the jury. If the plaintiff shows any genuine issue of material fact (as to the affirmative defense or otherwise), the defendant loses the motion. We gather, then, that raising an affirmative defense with factual overtones is a difficult task for a defendant at a phase when he is attempting to negate all factual issues.

It should be emphasized that the discussion of the employer's affirmative defense in *Faragher* relates directly to harassment by a supervisor. If the harasser is not a supervisor and is merely a co-worker, the principles in *Faragher* may not apply. Until *Faragher,* the Third Circuit uniformly used a negligence standard, holding that liability under Title VII exists "if the employer knew or should have known of the harassment and failed to take prompt remedial action." *Bonenberger v. Plymouth Township,* 132 F.3d at 20, 26 (3d Cir.1997) (citing *Andrews,* 895 F.2d at 1486). In *Kunin,* a case decided after *Faragher,* the Third Circuit again used this standard to analyze sexual harassment by a co-worker.[14] "Prompt remedial action" alleviates employer liability only if it is "reasonably calculated to prevent further harassment." *Bonenberger,* 132 F.3d at 26 (citing *Knabe v. Boury Corp.,* 114 F.3d 407, 412 (3d Cir.1997)).

Robbins claims that her hostile work environment was caused principally by the actions of two employees: Auth and Howard. The parties agree that Auth, a production manager, was Robbins' supervisor, and that Howard, a roofer, was Robbins' co-worker.[15] We will therefore analyze Auth's and Howard's actions separately.[16]

---

14. A question remains as to whether the affirmative defense may be available at all in the case of harassment by a co-worker. *Faragher* never explicitly stated that the defense is for the actions of supervisors only, and non-supervisory co-workers of course do not generally have the authority to take adverse employment actions against other employees. Since *Faragher,* however, most courts, including our Court of Appeals, have declined to apply the affirmative defense in co-worker harassment cases. *See Curry v. Dist. of Columbia,* 195 F.3d 654, 659 (D.C.Cir.1999) ("Every circuit that has addressed co-worker harassment in the "post-*Faragher* era" has distinguished the standard applicable to co-worker harassment from that governing harassment by a supervisor, applying to the former a variation of the negligence standard the circuit had applied pre-*Faragher.*").

15. To be sure, we agree that Auth was Robbins' supervisor. The record shows that Auth, as plant manager, had the power to terminate Robbins' employment. (Auth Dep. at 57.) While the question of whether a harasser is a supervisor is usually a factual one, *see Glickstein,* 1999 WL 58578, at *13, we find that Auth is a supervisor because both the facts and his status are undisputed.

16. Another question remains whether, if an employer is not liable for a supervisor's conduct as a result of the affirmative defense, the supervisor's conduct should still be considered to hold the employer liable in a "totality of the circumstances" inquiry. It would seem illogical to rule that an employer is not liable for a supervisor's conduct yet still find a hostile work environment based at least in part on the supervisor's conduct. We do not en-

Robbins does not claim that Auth's actions culminated in a tangible employment action; she asserts that she was fired in retaliation for complaining about Howard's actions, which is a separate cause of action to be analyzed later. Since no tangible employment action was taken, Deluxe accordingly raises the *Faragher* affirmative defense to liability. That is, Deluxe argues that it had an appropriate sexual harassment policy and that Robbins unreasonably failed to utilize it. Robbins admits that she was aware of Deluxe's sexual harassment policy. The policy reads, in pertinent part, as follows:

> It is the policy of the Company to prohibit discrimination against any employee on the basis of sex. In keeping with that policy, the Company will not tolerate any kind of sexual harassment by any of its employees. Any employee who is subjected to or witnesses possible sexual harassment must immediately bring the incident to the attention of Frank N. Kynik, Director of Personnel, or any other member of management without fear of reprisal.

(Deluxe's Sexual Harassment Policy, attached to Deluxe's Exhibit 1.) Kynik states that the policy has been in effect since 1991, and that it has been successful in resolving problems. (*See* Affidavit of Frank Kynik, Rec. Doc. No. 25.) We find that Deluxe has satisfied its burden on the first element of the affirmative defense, as it indisputably proves the existence of a sexual harassment policy with a complaint procedure.

To satisfy the second element, Deluxe must present incontrovertible evidence that Robbins unreasonably failed to take advantage of any preventive or corrective opportunities it provided or to avoid harm otherwise. Deluxe may satisfy this burden by showing that Robbins unreasonably failed to utilize the policy. Deluxe notes that it is undisputed that Robbins never complained about Auth to either Kynik or

any other member of management. (Robbins Dep. at 84, 94.) It also produces numerous affidavits in which Robbins' coworkers state both that they were unaware of any possible harassment by Howard or Auth and that Robbins never talked to them about it. (*See* Affidavits of Beverly Shultz, Peggy Yost, Sandra Williams, Donna Fisher, Gordon Madl, and Aaron Jones, attached to Deluxe's Exhibit 1.)

After Deluxe presents evidence that Robbins unreasonably refused to take advantage of the company's sexual harassment policy, the burden shifts to Robbins to point to an issue of material fact. In her deposition, Robbins stated that she was afraid to complain to management about any of the sexual harassment because "[Auth] was in on it... he was one of the perpetrators." (Robbins Dep. at 183.) She also claims that she "was told by other employees to shut up about [any harassment] because I was going to—they would fire me. Not to make any complaints, and I guess I didn't pursue it any further because I was afraid I was going to lose my job." (*Id.* at 102–103.)

While courts in this circuit have given little guidance on the second prong of the affirmative defense, we note that courts in other circuits have held that failing to complain due solely to a subjective fear of termination is unreasonable as a matter of law. *See Fierro v. Saks Fifth Avenue,* 13 F.Supp.2d 481, 493 (S.D.N.Y.1998) (employee may not circumvent the reasonable complaint requirements of the affirmative defense by making conclusory allegations of feared repercussions). *See also Shaw v. AutoZone, Inc.,* 180 F.3d 806, 813 (7th Cir.1999) ("[W]e conclude that an employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment."). On the other hand, the EEOC Guidance suggests that if an employee does not complain because of a

counter this problem, as we will later determine that a reasonable jury may find a hostile

work environment even without Auth's actions.

*reasonable* fear of retaliation, then the affirmative defense fails because the employee cannot be said to have acted "unreasonably." [17]

The Third Circuit has not yet examined the issue of an employee's unreasonable behavior as it relates to the second prong of the affirmative defense, and we are not bound by any of the preceding cases or the EEOC Guidance. However, we recognize that to get to the jury on the affirmative defense, Robbins must provide at least an issue of fact as to whether her fear of retaliation was not unreasonable.

Although it is a close call, we find that Deluxe has failed to satisfy its heavy burden on this prong. Deluxe does satisfy its initial obligation by presenting undisputed evidence that Robbins did not complain to anyone about Auth's alleged harassment notwithstanding Deluxe's clear antiharassment policy. Robbins, however, points to an issue of fact that allows her to go to trial. She may have had a reasonable fear of retaliation that stopped her from complaining. She demonstrates that her inaction may have been reasonable by asserting that other employees informed her that she was in danger of losing her job if she complained. A jury therefore must decide, if it determines that Robbins' allegations are true, whether she acted unreasonably in failing to complain to management about Auth's actions. *Accord Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999) (question of whether employee acted reasonably under affirmative defense appropriately decided by a jury).

Deluxe will be liable for co-worker Howard's actions if it had actual or constructive notice of Howard's harassment and failed to take prompt remedial action. *Kunin* described two kinds of constructive notice. The first kind occurs "where an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer." *Id.* at 294. The second kind occurs "where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it." *Id.*

Robbins claims that Fisher, whom she perceived to be her supervisor, had both actual and constructive knowledge of the harassment by Howard. Robbins argues that Fisher had actual notice of the harassment due to various statements Fisher allegedly made and an incident Fisher allegedly witnessed, all of which Fisher denies. Robbins claims that Deluxe had constructive notice of the harassment because she complained about Howard's actions to Fisher. Fisher denies that Robbins complained to her about Howard.

Deluxe argues that even if Fisher witnessed the "Barbie" incident or Robbins did talk to Fisher about Howard, the company was not put on notice of sexual harassment. It argues that 1) Fisher was not "management level personnel" and therefore she was not at a sufficiently high level in Deluxe to put the company on either actual or constructive notice of any sexual harassment; and 2) even if Fisher was part of "management level personnel," Robbins' words were not sufficient to put Deluxe on constructive notice.

■ The first question that must be answered is whether Fisher was part of "management level personnel." "[A] supervisor's knowledge generally will be imputed to the company for purposes of liability only if the supervisor is at a sufficiently high level in the company hierarchy." *Bishop v. Nat'l Railroad Passenger Corp.,* 66 F.Supp.2d 650, 667 (E.D.Pa. 1999). Many cases examining the authority of an employee over a plaintiff involve situations in which the court is determining the status of the *alleged harasser,* rather than the employee receiving complaints. *See Glickstein v. Neshaminy*

---

17. *See* EEOC Enforcement Guidance: *Vicarious Employer Liability for Unlawful Harassment by Supervisors* (June 18, 1999), EEOC Compliance Manual (BNA) N:4075 (Binder 3); (http://www.eeoc.gov/docs/harassment.html).

School District, 1999 WL 58578, *12 (E.D.Pa. January 26, 1999); Sicalides v. Pathmark Stores, Inc., 2000 WL 760439, *7 n. 6 (E.D.Pa. June 12, 2000).

These cases do not apply in this context. "Determining whether a supervisor was in a position to accept notice of harassment for purposes of liability under Title VII entails a different inquiry than that involved in determining an employer's liability for harassment by supervisors." Williamson v. City of Houston, Texas, 148 F.3d 462, 465 (5th Cir.1998).

■ As "this area of law has not yet been fully developed," id. at 466, we turn to our sister circuits for guidance. "The issue [of which employee's knowledge binds the employer] does not turn on labels attached to levels of hierarchy." Id. (citing Young v. Bayer Corp., 123 F.3d 672, 673–75 (7th Cir.1997)). "An official's actual or constructive knowledge of harassment will be imputed to the employer when principles of agency law so dictate." Torres v. Pisano, 116 F.3d 625, 636 (2d Cir.1997). An employer will be charged with knowledge when 1) the official is at a sufficiently high level in the company to qualify as a "proxy" for the company; 2) the official has a duty to act on his or her knowledge and put a stop to the harassment; or 3) the official is charged with a duty to inform the employer of the harassment. Id. at 636–37 (citing Restatement (Second) Agency § 275). See also Williamson, 148 F.3d at 466 (citing Nash v. Electrospace Sys., Inc., 9 F.3d 401, 404 (5th Cir.1993) ("[An] important consideration is whether notice was given 'to those with authority to address the problem' ")). If a harassment victim reasonably believes that an official has a duty to stop or report the harassment, then the employer is bound by the concept of apparent authority. Torres, 116 F.3d at 638 (citing Restatement (Second) Agency § 273). "Except where facts are undisputed, the jury

determines questions of agency." Glickstein, 1999 WL 58578, at *13. See also Norton v. Railway Express Agency, Inc., 412 F.2d 112, 114 (3d Cir.1969) ("There is no question that under the law of Pennsylvania, the scope of the authority or employment of an agent or servant is a factual issue for jury determination.").

■ In her deposition, Robbins describes her perception of Fisher: "I always looked at Donna as my immediate supervisor because she was the one who prepared us for the day's work. She told us what units to go to, what work to do, what part of the unit we had to work in, who we were working with." (Robbins Dep. at 23.) Robbins also indicated that the spacklers went to Fisher with their problems:

Q: Did you think Donna Fisher was a member of management?

A: Yes, I did, because she was the one who we answered to. She was the one we went to with problems that—you know, pertaining to work.

(Id. at 100.)

In response to Robbins' contentions, Deluxe presents affidavits by Kynik and Fisher that state that Fisher, as a Captain, is not a member of management and does not have the authority to take any disciplinary action. (See Affidavit of Frank Kynik, and Affidavit of Donna Fisher, Rec. Doc. No. 25.) [18]

We find that there is a question of fact as to whether Fisher was a "management level" employee for the purposes of this inquiry. Robbins claims that she considered Fisher to be a member of management, and that she and others went to Fisher with her "problems." Fisher was called a "Captain," which might imply that she had a certain amount of authority in the company. (See Plaintiff's Counterstatement of Material Facts ¶ 10.) All Deluxe does to counter Robbins' assertions is

---

**18.** Kynik's affidavit, however, also states that "Ms. [Robbins], an Associate (spackler/finisher), reported to her Captain, Donna Fisher."

(See Affidavit of Frank Kynik at ¶ 14.) (emphasis added).

state that Fisher "is not a member of management." Deluxe must do more than rely on its self-made labels of hierarchical structure to win on this issue; a jury must decide if Robbins reasonably believed that Fisher was in a position either to stop the harassment or to inform Deluxe of its existence.

Now that we have determined that Robbins has presented sufficient evidence for a jury to decide the question of whether Fisher is a "management level" employee for the purposes of notice, we must decide whether Deluxe had either actual or constructive notice of any possible sexual harassment. We will assume for the purposes of this analysis that Fisher was in fact "management level personnel," and that Deluxe would be bound if Fisher had sufficient notice.[19]

■ Robbins has produced sufficient evidence to reach the jury on the issue of actual notice. According to Robbins, Fisher witnessed an employee named Tim calling Robbins "Barbie," and told Tim to "knock it off or we're going to have a sexual harassment suit against us." Fisher denies witnessing the incident and reprimanding Tim. Robbins also claims that after a male employee threw a piece of insulation at her, she said to Fisher, "I wish they'd knock it off. I'm so sick of them tormenting me." (Robbins Dep. at 81.) To this Fisher allegedly said, "Oh Judy. What do you expect? When women look like you, that's how guys act." *Id.* Robbins admits that this incident was nonsexual. *Id.* at 81–82. Regardless, by showing that Fisher might have demonstrated her awareness of possible sexual harassment by allegedly making these statements, Robbins has produced enough evidence that Deluxe, through Fisher, knew that sexual harassment may have been taking place on the premises. The

issue of Deluxe's actual notice must be decided by a jury.

Now that we have settled the issue of actual notice, we must analyze the issue of constructive notice. Initially, we examine the first of *Kunin*'s inquiries; i.e. whether Robbins provided Deluxe with enough "information" to put the company on constructive notice. Robbins claims that she complained to Fisher enough so that the company should have known of the alleged harassment. In this context, a plaintiff's complaints must be specific enough to let an employer know that the problem is sexual harassment. *Kunin* held that a plaintiff's complaint to her supervisor about a co-worker's "cursing" was insufficient to put the employer on notice because the "[the plaintiff's] use of the word 'cursing' did not communicate that the offensive language had sexual overtones." *Id.* at 294. The Third Circuit then adopted a rule that "when employees' complaints do not refer to sexually offensive behavior, employers are not on constructive notice of sexual harassment." *Id.* (citing *Murray v. New York Univ. College of Dentistry,* 57 F.3d 243, 250 (2d Cir.1995)) (dental student's complaints to faculty member that a patient "stared at her" and "tried to get her attention from across a hallway" were insufficient to put employer on notice of sexual harassment in violation of Title IX because employer had no way of knowing that the patient's conduct was of "an ongoing sexually offensive nature."); *Schiraldi v. AMPCO System Parking,* 9 F.Supp.2d 213, 216, 220 (W.D.N.Y.1998) (employee's complaints that co-worker "wouldn't leave her alone" and "called her names" "did not provide constructive notice to the employer, because they gave no indication that [the co-worker's] actions were in any way sexual."). District courts in the Third Circuit have followed *Kunin*'s lead. *See Sicalides,* 2000 WL 760439, at *8 (complaints to employer that alleged

---

**19.** We make this assumption because Robbins claims that Fisher was the only "management-level" employee to whom she complained while Howard's alleged conduct was

occurring. If Fisher was not a management-level employee, any complaints to her would be immaterial, and Deluxe could not be charged with constructive notice.

harasser was "inappropriate" and that plaintiff "felt uncomfortable" were insufficient to put employer on notice because the complaint did not state that the conduct had sexual connotations.[20]

Robbins claims that she provided the following "information" to Fisher:

1) At a company social outing, she told Fisher that "I don't understand why the guys act the way they do . . . I don't like some of the things that they're saying behind me when I'm working and some of the things that's going on." (Robbins Dep. at 78.) Fisher allegedly responded by saying, "They're just guys." *Id.*

2) On the way to this outing, Robbins told Fisher that "[Howard] was trying to get me to go out on a date with him. He kept asking me, 'Can't you at least go out to dinner with me? Will you please just go to a movie with me?' I told her then, I says, 'He's disgusting. He repulses me. I don't want him bothering me.' " (*Id.* at 268.)

3) After Howard allegedly touched Robbins' leg and said "Now that's a pretty sight," Shultz, whom Robbins claims witnessed this incident, allegedly told Fisher to "try and keep Kenny away from [Robbins]."

4) On the day Robbins' employment was terminated, she told Fisher that she was "so sick of Ken Howard's filthy mouth."

5) Robbins incorporates Fisher's witnessing Tim call her "Barbie" into this analysis of constructive notice,

■■■■ We find that there is a jury question as to Deluxe's constructive notice. Robbins' complaints about the male em-

ployees "tormenting" her and "acting the way they do" do not by themselves provide constructive notice. Her declaration that she was tired of Howard's "filthy mouth" likewise does not suffice. These comments alone do not rise to the requisite level outlined in *Kunin* because they do not indicate that sexual harassment was involved. Shultz's suggestion to Fisher that she keep Howard away from Robbins likewise is not by itself sufficient. However, sufficient evidence of constructive notice is established by two other considerations. First, Robbins claims that she told Fisher about her disgust with Howard's aggressive requests for dates. This complaint clearly had "sexual overtones." Second, whether or not Fisher had actual notice of harassment based on her allegedly witnessing Tim call Robbins "Barbie," we find that her presence at the scene of Tim's arguably gender-motivated behavior to be sufficient to put her on constructive notice (even if Robbins did not actually "provide her" with this information). Robbins, then, has sustained her burden as to this type of constructive notice.

■■■■ A plaintiff may also put an employer on constructive notice of sexual harassment where the harassment is so pervasive and open that a reasonable employer would have had to be aware of it. *Kunin* suggested that there are two factors to be considered in this analysis. First, the harassment must be pervasive and regular enough to give the employer a chance to witness it. *Kunin,* 175 F.3d at 295. Second, the harassment must have been "easily discoverable by management." *Id.*

**20.** *Kunin* states that constructive notice may be established "where an employee provides management level personnel with enough information to raise a probability of sexual harassment in the mind of a reasonable employer." *Kunin,* 175 F.3d at 294. We note that the word "probability of sexual harassment" in this context has not yet been defined, and it is unclear as to how "probable" the sexual harassment must be. *Kunin* indicates only that complaints that do not point to

conduct of a sexual character are not sufficient to provide notice, but the case does not suggest how extensive or serious the complaints (and therefore the probability of harassment) must be to be sufficient. We interpret *Kunin* to mean that a plaintiff's complaint will be sufficient to provide constructive notice to the employer if the complaint is about any amount of conduct having "sexual overtones."

First, we examine the pervasiveness. As stated above, Robbins claims that Howard was constantly whistling and shrieking in her direction. According to Walton, the whistling and taunting occurred daily. Howard allegedly encouraged a group of male employees to call Robbins "Barbie." The harassment, then, was sufficiently pervasive to put Deluxe on notice. Robbins worked at Deluxe for only about two months; all of the alleged incidents would have to have been fairly pervasive to fit within that span of time. Robbins has produced enough evidence to move forward on this element.

Second, we answer the question of whether Deluxe could easily have discovered the harassment. *Kunin* found notice lacking when the alleged harasser made his remarks to the plaintiff "at times when management was not within hearing range." *Id.* That is not the case here. Deluxe was an organization in which managerial and non-managerial employees worked side by side. Robbins worked closely with Fisher, and Miller was constantly observing the work being done. There is a good chance that management could have heard Howard's "shrieking and whistling." Robbins is entitled to have a jury decide whether the harassment was so pervasive and open that a reasonable employer would have had to be aware of it.

Since Robbins has presented a genuine issue of material fact as to whether Deluxe had notice of the alleged harassment, a jury may decide Deluxe's liability for Howard's conduct in light of the fact that Deluxe, which denies any notice of harassment, obviously did not take any remedial action.

In sum, Robbins has produced enough evidence to survive summary judgment on her hostile work environment claim.

### (B) Retaliation

The analysis of a motion for summary judgment on a retaliation claim under Title VII proceeds in three stages. *See Jones v. School District of Philadelphia,* 198 F.3d 403, 410 (3d Cir.1999) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–804, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). First, the plaintiff must establish a prima facie case of unlawful retaliation. *Id.* Second, if the plaintiff produces sufficient evidence to establish a prima facie case, the defendant has the burden to come forth with a legitimate, non-discriminatory reason for its actions against the plaintiff. *Id.* Third, if the defendant satisfies this burden, the plaintiff must prove by a preponderance of the evidence that the proffered reason is pretextual. *Id.*

### 1. Prima Facie Case

To establish a prima facie case for discriminatory retaliation under Title VII, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *See Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1299 (3d Cir. 1997).

Robbins must first prove that she engaged in a protected activity. Protected conduct includes making formal charges of discrimination "as well as informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or society in general, and expressing support of co-workers who have filed formal charges." *Barber v. CSX Distribution Services,* 68 F.3d 694, 701 (3d Cir.1995) (citing *Sumner v. United States Postal Serv.,* 899 F.2d 203, 209 (2d Cir.1990)). *See also Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1085 (3d Cir.1996) ("Protesting what an employee believes in good faith to be a discriminatory practice is protected conduct.").

Robbins has consistently maintained that she complained to Fisher about Howard's actions. As stated above, Robbins

has produced sufficient evidence that Fisher is "management" for the purposes of binding Deluxe. Additionally, Robbins claims that Miller was present during her heated confrontation with Howard. Fisher denies that Robbins ever complained to her, and Miller denies witnessing the alleged argument, but a genuine issue of fact exists as to whether Robbins indeed engaged in protected conduct. Furthermore, by firing Robbins, Deluxe obviously took an adverse employment action against her.

 To complete her prima facie case, Robbins must show a causal link between her protected conduct and Deluxe's adverse employment action. The person who performed the adverse employment action against the plaintiff must have had knowledge of the plaintiff's protected activity. *See Bedford v. Southeastern Pennsylvania Transportation Authority,* 867 F.Supp. 288, 293 (E.D.Pa.1994). Third Circuit case law is "seemingly split" as to whether temporal proximity between the protected activity and the alleged retaliatory act is sufficient by itself to support an inference of causation. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 279 (3d Cir.2000) (quoting *Robinson,* 120 F.3d at 1302). "However, we caution that this 'split' is not an inconsistency in our analysis but is essentially fact-based." *Id.* Cases have held that in order for temporal proximity alone to satisfy this element, the timing of the adverse employment action must be "unusually suggestive of retaliatory motive." *Shaner v. Synthes,* 204 F.3d 494, 505 (3d Cir.2000) (citing *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir.1997)). When temporal proximity alone is not sufficient to support an inference of causation, the timing of the action coupled with "other evidence" may support the inference. *Id.* at 280. Evidence of intervening antagonism may constitute "other evidence" for purposes of proving causation but is not the only way of doing so. *Id.* at 280–281. "For example, a plaintiff may establish the connection by showing that the employer gave inconsis-

tent reasons for terminating the employee." *Id.* at 281 (citing *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir.1986)). " 'It is important to emphasize that it is causation, not temporal proximity [or evidence of antagonism], that is an element of plaintiff's prima facie case, and temporal proximity [or antagonism] merely provides an evidentiary basis from which an inference can be drawn.' " *Id.* at 281 (quoting *Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 178 (3d Cir. 1997)). We look to the record as a whole to determine whether causation can be inferred. *Id.*

The timing of Robbins' firing may suggest a causal link between her complaints and the termination of her employment. She asserts that on the day she was fired, she had a confrontation with Howard while Miller watched:

> [W]hen I finally couldn't stand it anymore and I had a confrontation with Ken Howard, which I do believe was witnessed by Kevin Miller because he was only standing 20 feet away from us, and when Ken Howard made his last attempt to torment me, I blew up and told him to leave me alone. I said, "Get away from me and just leave me alone. I don't want nothing to do with you. I just want you to let me alone." . . . And Kevin Miller stood there and he heard it. I know that he heard it because if he didn't, he needs hearing aides [sic].

(Robbins Dep. at 111–12, 113.) That afternoon, Miller informed her that she was fired. (*Id.* at 114.) While Robbins did not complain directly to Miller, it is clear from the record that Miller and Fisher worked closely together. (*See* Affidavit of Donna Fisher at ¶¶ 5–6, Affidavit of Kevin Miller at ¶ 15.) Furthermore, the decision to terminate Robbins' employment came well before the end of her 30–day probation extension. Deluxe claims that it was not unusual to fire employees before the completion of their probation period, and provides a list of such employees. (*See* Supplemental Affidavit of Frank Kynik at ¶ 7.)

All of the employees listed, however, were terminated during their *initial* 60–day probationary period. Robbins was fired after her probation was extended for an additional 30 days, but before the 30 days were complete. The fact that this unusual employment action allegedly came immediately after Robbins' confrontation with Howard gives Robbins enough evidence to move forward on the causal link and fulfill her prima facie case.

### 2. Legitimate, Non–Discriminatory Reason

Since Robbins apparently argues that this is a "pretext" case, the court will apply the familiar burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). If the plaintiff meets her initial burden of production by satisfying the three above-mentioned criteria for a prima facie case, there is a presumption of unlawful discrimination and the burden then shifts to the employer to articulate one or more legitimate, non-discriminatory reasons for the adverse employment decision. *Id.; St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir.1997) (en banc). This burden is merely one of production; the employer need not prove that the reasons were in fact true. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection." *Id.*

Deluxe has met this burden. Through affidavit testimony, it has provided legitimate reasons for its dissatisfaction with Robbins. Miller states in his affidavit that after observing Robbins throughout her probationary period, he determined that both her production quality and her pro-

duction speed were inadequate. (*See* Affidavit of Kevin Miller at ¶¶ 11–14.) Deluxe also points to the fact that Robbins was aware that her speed needed to improve.

### 3. Pretext

After the legitimate, non-discriminatory reasons are given, the burden shifts back to the plaintiff to produce "sufficient evidence from which a jury could conclude that the purported reasons for defendant's adverse employment actions were in actuality a pretext for intentional... discrimination." *Jones*, 198 F.3d at 412.

In this circuit, a plaintiff arguing pretext may defeat a motion for summary judgment by satisfying the *Fuentes/Sheridan* standard. To do so, the employee must point "to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones*, 198 F.3d at 413 (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1067 (3d Cir.1996)).

To demonstrate pretext using the first alternative provided in *Jones*, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Keller*, 130 F.3d at 1108 (quoting *Fuentes*, 32 F.3d at 765). She must either 1) "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence," *Jones*, 198 F.3d at 413 (citing *Keller*, 130 F.3d at 1109; *Fuentes*, 32 F.3d at 765); or 2) "demonstrate, through admissible evidence, that the employer's articulated reason was not merely wrong, but that it was 'so plainly wrong that it cannot have been the employer's real reason.'" *Id.*

A plaintiff need not "cast doubt on each proffered reason in a vacuum." *Fuentes*, 32 F.3d at 764 n. 7. Rather, "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." *Id.* "Factors such as the defendant's credibility, the timing of an employee's dismissal, and the employer's treatment of the employee could raise an inference of pretext which would make summary judgment for the employer inappropriate." *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638–39 (3d Cir. 1993). The issue of pretext is generally determined by the credibility of the employer "'where the only evidence of [an employer's] intent is oral testimony . . . [since] a jury could always choose to discredit it.'" *Barber*, 68 F.3d at 699–700. On the other hand, "summary judgment is particularly appropriate where, notwithstanding issues of credibility, the nonmoving party has presented no evidence or inferences that would allow a reasonable mind to rule in its favor." In this situation, it may be said that the record as a whole points in one direction and the dispute is not "'genuine.'" *Schoonejongen v. Curtiss–Wright Corp.*, 143 F.3d 120, 130 (3d Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Co.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

To demonstrate pretext by the second alternative of the *Fuentes–Sheridan* standard, the plaintiff may point to evidence in the record which "'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id.* (quoting *Fuentes*, 32 F.3d at 764). To accomplish this, "the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Id.* (citing *Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir.1998); *Fuentes*, 32 F.3d at 765)).

We find that Robbins has set forth evidence that satisfies at least the first alternative of the *Fuentes–Sheridan* inquiry. At this stage, she need not produce evidence that Deluxe's reasons were in fact discriminatory; she merely needs to produce sufficient evidence such that a reasonable jury may find Deluxe's proffered legitimate reasons to be false. Robbins achieves this goal for the reasons stated above in the section on the "causal link" element of the prima facie case: Deluxe's credibility may be undermined by 1) the fact that Robbins is apparently the only employee who was discharged after 60 days but before her 30–day extension period ended; and 2) the unusual timing of her release as it related to her alleged confrontation with Howard. As such, Robbins may survive summary judgment on a claim of retaliation.[21]

## V. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

▮▮▮▮▮ Although it is unclear whether Robbins complains of intentional infliction of emotional distress, we will address her possible claim, but grant summary judgment to Deluxe. To establish a claim in Pennsylvania for intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Hoy v. Angelone*, 554 Pa. 134, 720 A.2d 745, 754 (1998). "Cases which have found a sufficient basis for a cause of action of intentional infliction of emotional distress have had [sic] presented only the most egregious conduct." *Id.* "It is extremely rare to find conduct in the employ-

---

**21.** Because Robbins has reached the jury by casting doubt on Deluxe's proffered reasons for her discharge, we need not discuss the second alternative of the *Fuentes/Sheridan* inquiry, as a plaintiff may survive summary judgment by satisfying only one of the *Fuentes/Sheridan* alternatives.

ment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Id.* (quoting *Cox v. Keystone Carbon*, 861 F.2d 390, 395 (3d Cir.1998)).

### ORDER (# 1)

For the reasons stated in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. The motion for summary judgment filed by defendant Deluxe Homes of PA, Inc. (Deluxe), (rec.doc. no. 22), is granted in part and denied in part.

1.1 The motion is granted in favor of individual defendants James Auth and Kenneth Howard on all claims. Entry of final judgment with respect to Auth and Howard is deferred until final disposition of the case.

1.2 The motion is granted in favor of all defendants as to any claims for intentional infliction of emotional distress.

1.3 The motion is otherwise denied.

2. The claim asserting wrongful discharge (Count III) is recharacterized as a claim for retaliation under Title VII and the PHRA.

3. The case is placed on the June 2001 Williamsport trial list, with jury selection scheduled for June 1, 2001, at 9:30 a.m., Fourth Floor, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

4. All motions in limine shall be filed on or before April 13, 2001, with supporting briefs attached. All opposing briefs shall be filed on or before April 27, 2001. No reply briefs are permitted.

5. A final pretrial/settlement conference will be held on April 30, 2001, at 11:00 a.m., in Chambers, Fourth Floor, Federal Building, 240 West Third Street, Williamsport, Pennsylvania.

We find that Auth's and Howard's alleged actions, while inappropriate, did not rise to the level of "the most egregious

22. Because we find that the conduct alleged by Robbins was not so outrageous as to entitle her to a jury determination on her claim for intentional infliction of emotional distress, we need not examine the potential questions reguarding preemption, under the exclusivity

conduct." We will accordingly grant Deluxe's motion for summary judgment as it relates to Robbins' potential claim of intentional infliction of emotional distress.[22]

### VI. CONCLUSION

Based on the foregoing reasons, Deluxe's motion for summary judgment will be granted in part and denied in part. An order consistent with this memorandum will be issued.

provision of the Pennsylvania Worker's Compensation Act (PWCA), 77 P.S. § 481(a), of various work–related claims for intentional infliction of emotional distress. *See, e.g., Durham Life Ins.*, 166 F.3d at 160 (explaining PWCA's preemption of such claims).